MICHIGAN AERO CLUB *v.* SHELLEY.

1. AVIATION—DEFINITION OF PASSENGER.

"Passenger," as defined in provisions of penal code prohibiting low flight or dropping objects while over thickly inhabited areas or public gatherings, means any person not the pilot or member of the crew of any aircraft (Act No. 328, § 43, Pub. Acts 1931).

2. SAME—DEFINITION OF AERONAUT.

"Aeronaut," as used in provisions of penal code prohibiting low flight or dropping objects while over thickly inhabited areas or public gatherings, includes aviator, pilot, balloonist, and every other person having any part in the operation of aircraft while in flight (Act No. 328, § 43, Pub. Acts 1931).

3. TRIAL—THEORY OF CASE.

Recovery by a plaintiff must be had, if at all, on the theory on which it tried the case.

4. PLEADING—OBJECT OF DECLARATION.

The chief object of a declaration is to apprize the opposite party of the cause of action and the claim of plaintiff.

5. SAME—CONTENTS OF DECLARATION.

Though a declaration is not required to set up the evidence by which plaintiff's cause of action is to be proved, it must contain a specific and unequivocal statement of the essential facts constituting the cause of action.

6. AVIATION—AIRPLANE WITH DUAL CONTROLS—PRESUMPTIONS.

In action for loss of airplane by nonprofit, nonstock corporate club owner against estate of club member who had taken plane equipped with dual controls out and was operating it with controls connected in violation of club, State and Federal rules, no presumption exists that plane was being operated by de-

fendant's decedent from front cockpit rather than by his
passenger in rear cockpit nor that member was acting prop-
erly where neither he nor his passenger had transport pilot's
licenses (Act No. 53, Pub. Acts 1931, as amended by Act
No. 119, Pub. Acts 1935; Act No. 328, §§ 43-45, Pub. Acts
1931; 44 Stat. at L. p. 568 *et seq.*).

7. EVIDENCE—PRESUMPTIONS—DEFINITION.
    Presumptions are merely *prima facie* precepts and are inferences
    from the existence or nonexistence of facts.

8. SAME—PRESUMPTIONS—INTRODUCTION OF EVIDENCE.
    Presumptions disappear if, and when, evidence is introduced from
    which facts may be found and cannot be weighed against evi-
    dence.

9. NEGLIGENCE—PRESUMPTIONS—ACCIDENT.
    Negligence is not presumed but must be proved and the mere
    happening of an accident raises no presumption of negligence.

10. EVIDENCE—AVIATION—PRESUMPTIONS.
    Presumption, if any, that defendant's decedent, a member of
    plaintiff club, was operating airplane with dual controls at
    time plane crashed *held*, to have disappeared upon introduction
    of proof that his passenger in rear cockpit was a pilot and
    dual controls were connected immediately prior to flight in
    question (Act No. 53, Pub. Acts 1931, as amended by Act
    No. 119, Pub. Acts 1935; Act No. 328, §§ 43-45, Pub. Acts
    1931; 44 Stat. at L. p. 568 *et seq.*)

11. TRIAL—SUFFICIENCY OF EVIDENCE.
    If plaintiff, due to lack of proof, does not make out his case, the
    court should so hold.

12. EVIDENCE—CLAIM.
    A mere claim cannot stand in place of evidence and operate as
    proof and things not made to appear must be taken as not
    existing.

13. SAME—GUESS.
    A plaintiff's case must be established by the evidence and the
    court may not guess in default of evidence.

14. JUDGMENT—CONJECTURE.
    A judgment cannot be based upon speculation or conjecture.

15. Aviation—Airplane with Dual Controls—Negligence—Evidence.

>   Airplane club, owner of plane taken out by defendant's decedent, a member who had obtained plane with dual controls and was using it contrary to club, State and Federal rules, *held*, to have failed to prove case for damages for destruction of plane by showing either that defendant's decedent was the pilot or that the plane was demolished solely because of his negligence and his violation of law and fundamental rules of flying, where passenger in rear cockpit was also a pilot, dual controls were connected and both men were killed in crash (Act No. 53, Pub. Acts 1931, as amended by Act No. 119, Pub. Acts 1935; Act No. 328, §§ 43–45, Pub. Acts 1931; 44 Stat. at L. p. 568 *et seq.*).

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted January 14, 1938. (Docket No. 82, Calendar No. 39,845.) Decided February 25, 1938. Rehearing denied April 4, 1938.

Michigan Aero Club, a Michigan corporation, filed its claim for damages to an airplane against the estate of Leo F. Hickey, alias John O'Neill, deceased, in the probate court. Claude D. Shelley, administrator, objected thereto. From denial of claim by commissioners on claims, plaintiff appealed to circuit court. Judgment for plaintiff. Defendant appeals. Reversed without a new trial.

*Cole & Lockwood* (*Ralph W. Cole,* of counsel), for plaintiff.

*Geo. J. Schmeman* (*John A. Hamilton,* of counsel), for defendant.

Potter, J. Plaintiff filed a claim against the estate of Leo F. Hickey, deceased, in the probate court of Wayne county. The claim was there disallowed and appeal taken to the circuit court where

the case was heard without a jury. Plaintiff recovered judgment for $2,200 and costs. From this judgment, the administrator of the estate appeals.

At about 6:30 p. m., April 26, 1936, an airplane, owned by plaintiff, a nonprofit, nonstock Michigan corporation, crashed in the city of Detroit near the southwest corner of State Fair and Waltham avenues, resulting in the death of Leo F. Hickey, a member of the corporation, and William Madyck, not a member. The airplane and its equipment were demolished. To recover for the value of this plane, the claim was presented.

Leo F. Hickey was approximately 32 years of age, held a private pilot's license and had been flying aircraft for about five years. Madyck held an amateur pilot's license, though but 18 years old. He owned a private plane, kept it at the Detroit city airport, held a mechanic's license, and was employed by the Central Airlines as a skilled aircraft mechanic. No witness saw the plane take off. After the crash, Hickey was found in the front cockpit, dead; and Madyck in the rear cockpit, fatally injured and unconscious.

Arthur Torby, a licensed pilot and an officer of the club, had made a flight in the plane at about 4 p. m. on the day of the crash and testified when he returned from his flight the dual controls in the plane were not connected. After Torby used the plane, a flight was made by Hickey, and upon his return one Hardesty took the plane for a flight and returned to the airport. Hickey and Madyck then took the plane. Between the flight of Torby and the time of the crash, someone connected the dual controls on the plane. After the crash, it was established the dual controls were connected at the time of the accident and a stick was present in the rear cockpit. The

plane, with the dual controls connected, could be operated equally well from the front and rear cockpits. Parachutes were found strapped to the backs of both Hickey and Madyck. On the day of the crash, Michael Them, holder of a United States department of commerce transport pilot's license, was flying instructor of the club. Hickey obtained custody of the plane from Them and permission to fly it in accordance with the usual practice. He did not inform Them that Madyck was going up in the plane. The rules of the club required him to do so.

There was testimony by those who saw the plane in the air that it was engaged in acrobatic or stunt flying. This was against the rules of the club and in violation of State and Federal laws which provide acrobatic and stunt flying must be completed at a height of not less than 1,500 feet. The testimony of those who saw the plane in action indicates the plane was under the altitude prescribed.

Subsection 2 (c) of section 72 of chapter 7 of the air traffic rules adopted and promulgated by the secretary of commerce of the United States * in pursuance of 49 Stat. at L. p. 570, as amended (49 USCA, § 173 [e]), provides that "any acrobatic maneuvers * * * shall be concluded at a height greater than 1,500 feet."

Act No. 53, Pub. Acts 1931, as amended by act No. 119, Pub. Acts 1935 (Comp. Laws Supp. 1935, § 4801 *et seq.*), provided for a board of aeronautics and authorized it to adopt the United States air commerce act of 1926 (44 Stat. at L. p. 568 *et seq.* [49 USCA, § 171 *et seq.*]), but provided it might add to or deviate from the Federal rules when deemed necessary for the public safety and for the safety of aircraft and airmen.

---

* Effective, as amended, January 1, 1934.

Section 6 (h) of the air traffic rules of Michigan is substantially the same as the above quoted subsection of the United States air commerce act.

The rules and regulations of the Michigan board of aeronautics, § 6 (o),* provide:

"DUAL CONTROLS—No airman, except a licensed transport pilot, shall pilot an aircraft within this State equipped with dual controls or part of such controls when carrying a passenger in the cockpit where such controls is (are) located, except by special permission from the State board of aeronautics."

No such permission was obtained by Hickey or Madyck.

"Passenger" means any person not the pilot or member of the crew of any aircraft. Act No. 328, § 43, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 17115–43).

"Aeronaut" includes aviator, pilot, balloonist, and every other person having any part in the operation of aircraft while in flight. Act No. 328, § 43, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 17115–43).

"*Any aeronaut or passenger* who, while in flight over a thickly inhabited area or over a public gathering, within this State, shall engage in trick or acrobatic flying, or in any acrobatic feat, or shall, except while in landing or taking off, fly at such a low level as to endanger the persons on the surface beneath, or drop any object except loose water or loose sand ballast, shall be guilty of a misdemeanor punishable by imprisonment in the county jail not more than one year or by a fine of not more than five hundred

---

* See Rules and Regulations governing the Inspection of Aircraft and Parachutes; The Regulation of Exhibition Parachute Jumps and the Air Traffic Rules of Michigan. Effective, as amended, April 1, 1935.

dollars.'' Act No. 328, § 44, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 17115–44).

''Any person who shall operate any aircraft over open air assemblies of people at a height of less than fifteen hundred feet from the ground, shall be guilty of a misdemeanor, punishable by imprisonment in the county jail not more than one year or by fine of not more than five hundred dollars: *Provided,* That this section shall not apply to groups assembled for the purpose of witnessing aerial exhibitions and stunt flying, nor to groups assembled at a flying field.'' Act No. 328, § 45, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 17115–45).

There was testimony some of the acrobatic maneuvers of this plane were over congested areas of the city of Detroit in violation of both the State and Federal air traffic rules, though completed above the 1,500 feet limit as to altitude. U. S. Air Commerce Regulations, § 72 (2a); * Michigan Air Traffic Rules, § 6 (h).†

It is conceded the plane was airworthy when taken up on its last flight. There was testimony which might indicate the engine was faulty just before the crash, and other testimony it was functioning properly.

At the conclusion of plaintiff's testimony, defendant made a motion to dismiss for the reason no actionable negligence was shown on the part of Hickey; if negligence was shown, it was not the proximate cause of the accident; the death of Hickey terminated all liability to plaintiff; the by-laws of the corporation made no provision for such a suit; the testimony was just as consistent with the fact the dam-

* Effective, as amended, January 1, 1934.

† Rules and Regulations governing the Inspection of Aircraft and Parachutes; The Regulation of Exhibition Parachute Jumps and the Air Traffic Rules of Michigan. Effective, as amended, April 1, 1935.

age was caused by a forced landing as with the contention it was caused by a flight at low altitude; and the court, on the testimony, could only conjecture the cause of the crash. The trial court took this motion under advisement. Defendant proceeded to introduce testimony. The motion was renewed at the close of all the testimony.

Plaintiff claims it may recover damages from the estate of one of its members for the destruction of a plane owned by it and placed in its member's possession for the purposes of flight even when there is no direct proof whether the plane was being operated by the member or his passenger. Plaintiff alleged Hickey was the pilot, and the plane was completely demolished due solely to the negligence of Hickey and his violation of law and the fundamental rules of flying.

Plaintiff must recover, if at all, on the theory on which it tried the case. The trial court disposed of the case upon the theory that Hickey violated the bailment contract. No such theory was advanced by plaintiff in its claim against Hickey's estate, nor in the trial court.

The chief object of a declaration is to apprize plainly the opposite party of the cause of action and the claim of plaintiff. *Nugent* v. *Teachout,* 67 Mich. 571. Though a declaration is not required to set up the evidence by which plaintiff's cause of action is to be proved, yet it must contain a specific and unequivocal statement of the essential facts constituting the cause of action. *O'Neil* v. *Railway Co.,* 101 Mich. 437.

Plaintiff's declaration charges that Madyck was a mere passenger, and Hickey alone was responsible for the crash. The trial court said to hold otherwise than that Hickey was operating the plane in a negligent manner would mean the court would have to

guess or hold as a matter of conjecture there was in truth and in fact a forced landing. There is nothing except guessing and conjecture to indicate that Hickey, rather than Madyck, was negligently operating the plane.

There is no presumption the plane was being operated from the front cockpit. There is no presumption that Hickey was acting properly in face of the proof the plane was being operated in violation of the club, State and Federal rules. The club and State rules in relation to dual controls were violated because neither the pilot nor the passenger had a transport license. There is no proof even that Hickey knew the dual control stick was in the rear cockpit when he took off. Hickey was an experienced flyer, 14 years older than Madyck, was an average pilot, the club rules required members of the club obtain permission from the instructor before taking up passengers. It is just as consistent with what happened to claim that Madyck connected the dual controls, operated the plane from the rear cockpit, was engaged in stunt flying to demonstrate his skill and that Hickey permitted him to do so, and that, though Hickey may have thought Madyck's operation of the plane was dangerous, he preferred to take a chance with Madyck's operation rather than to attempt to control the plane from the front cockpit with the possibility both controls might become jammed and a crash rendered certain. This is mere conjecture, but it is not inconsistent with what happened. There is no presumption Madyck was not operating the plane. The dual controls were connected by someone, probably for some reason, and that enabled the person in the rear cockpit to control the plane. There is no presumption under the admitted facts that Hickey was operating the plane at the time of the crash.

Presumptions are frequently misapplied. They are merely *prima facie* precepts. Thayer's Evidence at Common Law (1st Ed.), p. 346. They are inferences from the existence or nonexistence of facts. *Thompson* v. *Southern Michigan Transportation Co.*, 261 Mich. 440. They disappear if, and when, evidence is introduced from which facts may be found (*Patt* v. *Dilley*, 273 Mich. 601), and cannot be weighed against evidence (*Essmeister* v. *Roadway Transit Co.*, 275 Mich. 387). Negligence is not presumed but must be proved. *Fleegar* v. *Consumers Power Co.*, 262 Mich. 537. The mere happening of an accident raises no presumption of negligence. *Brebner* v. *Sidney Hill Health System, Inc.*, 269 Mich. 541; *Collar* v. *Maycroft,* 274 Mich. 376.

If there was any presumption from the fact Hickey obtained the plane that he was operating it, that presumption disappeared in the face of the proof Madyck was in the rear cockpit, the dual controls connected, a stick present, Madyck a pilot, and that the dual controls were connected immediately prior to the flight in question. If plaintiff, due to lack of proof, does not make out his case, the court should so hold. *Lendberg* v. *Brotherton Iron Mining Co.*, 75 Mich. 84. A mere claim cannot stand in the place of evidence and operate as proof. *Stewart* v. *Ashley,* 34 Mich. 183. Things not made to appear must be taken as not existing. *Van Auken* v. *Monroe,* 38 Mich. 725. Plaintiff's case must be established by the evidence. The court may not guess in default of evidence. *Marquette County* v. *Ward,* 50 Mich. 174; *Baird* v. *Abbey,* 73 Mich. 347; *Swift & Co.* v. *McMullen,* 169 Mich. 1. The most that can be said is that it is a subject of conjecture whether Hickey was in control of the plane at the time of the crash or was actually operating it. Judgment cannot be based

upon conjecture. *Holgate* v. *Chrysler Corp.*, 279 Mich. 24.

In *Budgett* v. *Soo Sky Ways, Inc.*, 64 S. D. 243 (266 N. W. 253), one Hollister was demonstrating a Travelair OX5 open cockpit model plane equipped with two cockpits and dual controls. Budgett and Schmidt, both licensed airmen, occupied the front cockpit, while Hollister was in the rear cockpit. The controls were connected. The plane took off under the control of Hollister. It shortly stalled, took a nosedive and crashed to the ground. Schmidt and Budgett were killed. It was said:

"It is not necessary to determine which, if either, of the parties was negligent, because however negligent Schmidt and Budgett may have been in riding in the cockpit with the dual controls hooked up, it is not shown by any evidence in the record that such negligence contributed in any way or to any extent to the accident. It is possible that either Schmidt or Budgett may have taken hold of the stick and moved it in such a way as to have turned the nose of the ship toward the ground, and in that way caused the crash; but there is no evidence that either of them did anything of the kind.

"On the other hand, the pilot may have made a false move and pulled the stick the wrong way, or he may have made too short a turn or too steep a bank and lost flying speed of the ship, and for that reason it fell to the ground. * * *

"There is no more probability that the accident was caused by negligence on the part of the defendant than on the part of Budgett or Schmidt. In other words, plaintiff has failed to sustain the burden of proof and cannot recover."

In this case, the crash may have been caused by the negligence of Madyck operating the plane from the rear cockpit as in *Budgett* v. *Soo Sky Ways, Inc.*, *supra.* Or he may have taken hold of the stick and

moved it in such a way as to nose the ship toward the ground. He may have made a false move. He may have pulled the stick the wrong way. He may have made too short a turn. He may have made too steep a bank. He may have lost flying speed when the plane was nosed upward and according to some testimony dropped approximately 100 feet. Something may have happened to the motor and the plane gotten out of control. There is no more probability the accident was caused by the negligence of Hickey than there is it was caused by the negligence of Madyck.

A judgment may not be based upon speculation or conjecture. *Nashville, C. & St. L. R.* v. *Pollard,* 14 Tenn. App. 388. To prove a possibility only, or to leave the issue to surmise or conjecture, is never sufficient to sustain a judgment. *Columbus & G. R. Co.* v. *Coleman,* 172 Miss. 514 (160 South. 277). A verdict must stand upon evidence and not upon conjecture however plausible. *Deery* v. *Hall,* 96 Ind. App. 683 (175 N. E. 141); *McMaster* v. *Warner,* 44 Idaho, 544 (258 Pac. 547). A verdict cannot be permitted to stand which rests upon conjecture, surmise or speculation. *Wheelock* v. *Freiwald* (C. C. A.), 66 Fed. (2d) 694. Plaintiff must make out his case by proof or fail to recover. There was a failure of proof (*Murphy* v. *Railway Co.,* 71 N. J. Law, 5 [58 Atl. 1018]; *Dudley* v. *Duval,* 29 Wash. 528 [70 Pac. 68]; *Hauer* v. *Sampsell,* 153 Ill. App. 66; *Southern R. Co.* v. *Lee,* 167 Ala. 268 [52 South. 648]; *Rock Island Plow Co.* v. *Cut Bank Imp. Co.,* 101 Mont. 117 [53 Pac. (2d) 116]; *Kaplan* v. *Lanzner,* 193 N. Y. Supp. 2); and plaintiff may not recover.

Judgment reversed without new trial. Costs to defendant.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, CHANDLER, NORTH, and McALLISTER, JJ., concurred.