LESLIE *v.* MENDELSON.

1. APPEAL AND ERROR—DIRECTED VERDICT—JUDGMENT NOTWITHSTANDING VERDICT—EVIDENCE.
    On review of denial of defendant's motions for directed verdict and for judgment notwithstanding verdict, the testimony must be viewed in the light most favorable to plaintiff.

2. SAME—NEW TRIAL—EVIDENCE.
    On review of denial of motion for new trial, the question is for determination of the great weight of the evidence.

3. SAME—DECLARATION ON CONTRACT—BILLS OF PARTICULARS—AMENDMENT.
    On review of action for damages for breach of an alleged contract, the contract declared upon as amplified by the bills of particulars is considered as sufficiently amended to allow consideration of the contract ultimately claimed.

Uncertainty or ambiguity in manifestations of intent may prevent the formation of a contract, see 1 Restatement, Contracts, § 71.

4. PLEADING—PURPOSE OF DECLARATION.

   The chief object of a declaration is to apprise the opposite party of the cause of action and the claim of plaintiff.

5. ACTION—CONTRACTS—THEORY OF CASE.

   Recovery in action on a contract, if at all, must be on the theory on which plaintiff tried the case.

6. CONTRACTS—SPEEDBOAT DESIGN—EVIDENCE.

   In action for breach of a claimed contract to pay plaintiff a certain sum of money if defendant adopted and used the general principles of the design of a speedboat revealed by plaintiff, recovery cannot be had for damages merely on the theory that defendant used novel or unusual principles or designs disclosed to him by plaintiff and, therefore, is liable, in the absence of proof of a contract, as a mere claim of contract cannot stand in place of proof.

7. EVIDENCE—JUDGMENT—CONJECTURE.

   A plaintiff's case must be established by the evidence.

8. JUDGMENT—CONJECTURE.

   A judgment cannot be based on speculation or conjecture.

9. CONTRACTS—MEETING OF MINDS—EVIDENCE.

   In action for breach of alleged contract to pay plaintiff a certain sum of money in case defendant used principles and designs revealed by plaintiff in the construction of a speedboat, where it appears there was nothing distinctive or unusual in plaintiff's principles and designs and record is devoid of convincing proof that the minds of these parties ever met on a contract, recovery is denied plaintiff on contract theory.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted April 14, 1942. (Docket No. 71, Calendar No. 41,793.) Decided June 10, 1942.

Assumpsit by Bert Leslie against Herbert Mendelson for sums due for breach of an alleged contract. Verdict and judgment for plaintiff. Defendant appeals. Reversed without a new trial.

*Edward N. Barnard,* for plaintiff.

*Butzel, Levin & Winston,* for defendant.

BOYLES, J. Plaintiff claims $5,000 damages for breach of an alleged agreement by defendant to pay that sum to plaintiff if he (defendant) adopted the principles and design of a certain speedboat. The alleged contract is thus set out by plaintiff in his declaration:

## "COUNT I

### I.

"That in the month of March, 1934, in the city of Detroit, Michigan, plaintiff and defendant entered into a contract wherein and whereby the defendant did promise and agree to and with plaintiff that if he, the said plaintiff, would disclose to defendant the principles of design of a certain speedboat, a model of which plaintiff had theretofore constructed, and would permit defendant to examine such model, that he, the said defendant, would pay to plaintiff the sum of five thousand ($5,000) dollars if in the construction of a speedboat which defendant contemplated building the said defendant should adopt and use the design and principles of the aforesaid model speedboat."

Plaintiff claims that defendant accepted the offer, that plaintiff disclosed the principles and design of his speedboat to defendant, that defendant did adopt and use the same in constructing a speedboat, and therefore defendant owes plaintiff $5,000.

Before answering, defendant demanded a bill of particulars of plaintiff's claim, which was filed as follows:

"For adopting and using principles and design of plaintiff's model speedboat on a boat known as the Notre Dame G-5...... $5,000"

Being required to file a more specific bill of particulars, plaintiff explained his claim as follows:

"The plaintiff claims that the defendant adopted and used the entire design of his model boat in his construction of the boat known as the Notre Dame G-5, more specifically as follows:

"(a)   Adopted and used the streamline design of the boat which is known as a round or whale back design.

"(b)   Adopted and used the type of bow.

"(c)   Adopted and used the same type of a tapered hull, to-wit: Said hull tapering from the seating compartment to the bow.

"(d)   Adopted and used design of cowl for seating capacity and hood effect over motor.

"(e)   Adopted and used the same arrangement of the steps on the bottom of the boat in the same proportion."

Defendant denied the existence of any contract, claimed that plaintiff's model speedboat was exhibited to defendant only for the purpose of getting defendant interested therein, denied that there were any novel principles or designs in plaintiff's model, or that any of them were ever adopted or used by him. The case was tried by jury, at the close of proofs defendant moved for directed verdict, decision thereon was reserved, and the jury gave plaintiff a verdict for $5,000. Defendant then moved for judgment notwithstanding verdict on the ground (among others) that plaintiff had failed to prove any contract, both motions were denied, and judgment entered for plaintiff. Defendant thereupon moved for a new trial on the ground (among others) that the verdict and judgment entered thereon were contrary to the great weight of the evidence. Motion was denied and defendant reviews all questions by general appeal.

The issues before us must be viewed in two different lights. On defendant's motion for directed verdict and for judgment notwithstanding verdict, the testimony must be viewed in the light most favorable to plaintiff. On review of denial of motion for new trial, the question is for determination of the great weight of the evidence. The issues require examination of the record to ascertain whether the facts are sufficient to sustain the denial of the motions. The first question before us is, Did plaintiff prove the contract?

1. Plaintiff's theory of an oral contract as disclosed at the trial was somewhat different from that claimed by him in his declaration. In declaring, plaintiff claimed that *if he would disclose* to defendant the principles or design of his model and permit defendant to examine it, defendant promised to pay him $5,000 if he (defendant) should adopt and use plaintiff's principles and designs. Somewhat differently, plaintiff's counsel in his opening statement at the trial contended:

"That a contract was entered into whereby if the defendant would adopt and use the general principles of the design of this particular boat and blueprints, that Mr. Leslie was to reveal to Mr. Mendelson, he would compensate him to the extent of $5,000."

The difference between a promise to pay plaintiff $5,000 *if he would exhibit* his model and *disclose* his plans and defendant used them, and the contract claimed on the trial, is apparent. However, we may consider the declaration (amplified by the bills of particulars) as being sufficiently amended to allow consideration of the contract ultimately claimed. Was there a verbal understanding or agreement that "if the defendant would adopt and use the general principles of the design of this particular boat and

blueprints, that Mr. Leslie was to reveal to Mr. Mendelson, he would compensate him to the extent of $5,000.''

Plaintiff testified that he was a carpenter by trade, interested in motorboats, and had made many models; that he contacted a relative of the defendant to get an interview. This was arranged in March, 1934, at which conference were present the plaintiff, his friend George Patrickus, the defendant, and his boat builder, Mr. Perry. Plaintiff claims an agreement was entered into at this conference and testified to the agreement as follows:

"*Q.* Now, did you have an agreement with Mr. Mendelson before you showed him the blueprint and your boat, as to the question of adopting any of the designs of that boat construction?

"*A.* Yes, I did.

"*Q.* What was your agreement?

"*A.* My agreement was for $5,000, which I thought at that time was cheap.

"*Q.* What was the agreement itself about the question of using or employing the designs of that model and the blueprint which you later revealed?

"*A.* Well the agreement was if he could use my boat, which was at that time new—different parts of it—design—I was to be compensated.

"*Q.* Now, in response to that agreement did you show him the boat?

"*A.* Yes, I showed him the blueprint and I showed him the model of the boat. I told him I would give him a rough idea of what the boat would look like, the model I showed him; there are certain sections on that model that compare with my blueprint.''

Plaintiff then showed his blueprint and model to the defendant and testified to what then occurred, as follows:

"*Q.* What did they say about your boat?

"*A.* Well Mr. Mendelson they—he looked at it and turned right around and handed it over to Mr. Perry, and Mr. Perry condemned it. He said he could not use it on account of the stern, it would be dangerous. I said that there are two sterns you can use on this boat; you can reverse and use the bull-dog and use the square stern and torpedo finish. I said the boat absolutely would be safe.

"*Q.* How long did you stay there?

"*A.* It must have been over half an hour, because Perry and I, we got into a little debate there over Fred Cooper from England, and what he said I didn't agree with.

"*Q.* After the debate did you leave?

"*A.* I packed up my model and came home."

On cross-examination, plaintiff testified:

"*A.* * * * The sum and substance of my conversation with Mr. Mendelson was that he wasn't interested in my model or blueprint. * * *

"*Q.* And the sum and substance of what you went to see Mr. Mendelson about was that they told you they were not interested in the model, isn't that right?

"*A.* Yes, they looked at the blueprint and the model and said they weren't interested.

"*Q.* And you never went back again until some year or two ago when you met Mr. Mendelson with Mr. Winston?

"*A.* No, I just let things ride in 1935, 1936 and 1937. I wanted to see what the boat really would do.

"I did mention the figure of $5,000 to Mr. Mendelson, when I went to see him in March of 1934. I said I had a good boat and that the boat was worth it, that the boat for $5,000 was cheap enough, and they said they weren't interested. I did not come back to see them again because I didn't see any need for it."

On redirect examination, plaintiff testified:

"*Q.* Will you state the conversation between you

and Mr. Mendelson, referring to the payment of $5,000?

"*A.* The conversation was that if he could use my design—

"*Q.* State clearly so we can hear you.

"*A.* If he could use that design, or any part of it, I was to receive that money, which was cheap.

"*Q.* I didn't ask you that, 'which was cheap'—

"*A.* Well, I was to receive the $5,000.

"*Q.* In the event he could use the general design of your boat?

"*A.* If he could use principles of my design of boat."

Mr. Patrickus, plaintiff's friend who was present at the conference, testified:

"*Q.* Did you have any particular knowledge of the conversation that day between the various parties?

"*A.* Well, the first thing when we went in he showed him his model and blueprint, and they talked about money, so Mr. Leslie wanted $5,000 if he could use any parts of his boat or his design, and that was to be the agreement between them."

This testimony is significant for two reasons: it refutes plaintiff's original claim that defendant agreed, before plaintiff exhibited his model, to pay $5,000 if plaintiff would disclose his model and designs and defendant used any of them; and, secondly, it shows that plaintiff "wanted $5,000" and evidently proposed "that *was to be* the agreement between them," but fails to establish an acceptance by defendant or a promise to pay. On cross-examination, Mr. Patrickus testified:

"*Q.* Did you hear Mr. Perry and Mr. Mendelson say that they were not interested in this model?

"*A.* Yes, I did.

"*Q.* And that ended the party, isn't that right?
"*A.* Yes, sir.
"*Q.* And then Mr. Leslie and you came away, is that right?
"*A.* That's right.
"*Q.* There was no question in your mind but that Mr. Mendelson was not interested, is that right?
"*A.* Yes, sir."

The foregoing is all of the testimony offered by plaintiff to prove a contract. As it was tried, this suit is predicated solely on a claimed contract to pay plaintiff $5,000 for use of certain principles and designs of a speedboat. Plaintiff's own testimony negatives any understanding or agreement to pay. He shows that the defendant definitely declined the proposition. The minds of the parties did not meet.

The chief object of a declaration is to apprise the opposite party of the cause of action and the claim of plaintiff. Recovery, if at all, must be on the theory on which plaintiff tried the case. *Michigan Aero Club* v. *Shelley,* 283 Mich. 401 (1938 U.S. Av. R. 79). Plaintiff's case is for breach of a claimed contract. Recovery cannot be had for damages merely on the theory that defendant used novel or unusual principles or designs disclosed to him by plaintiff and, therefore, is liable in damages. A mere claim cannot stand in place of proof. Plaintiff's case must be established by the evidence and a judgment cannot be based on speculation or conjecture. *Michigan Aero Club* v. *Shelley, supra.* That plaintiff is uncertain as to his own claim of a contract is convincingly shown by admissions made in a letter by his attorney to defendant seeking a conference for settlement:

"Please be advised that I have been retained by Mr. Bert Leslie who advises me that he had per-

fected the model of your Gold Cup boat the Notre Dame. He further advises me that before you had built this boat he had taken the matter of the design up with you at your office at which time you advised him that you were not interested *in the purchase of this design and model."*

This admission indicates a disclaimer of any contract or promise to pay, and discloses an attempted claim in tort for use of plaintiff's ideas. However, plaintiff does not claim any patent rights for his principles or designs. He never tried to obtain a patent or made a study to find out whether his ideas had ever been patented. At the conclusion of the conference with defendant, plaintiff took his model and blueprint with him. He admits it "was just a rough idea," that he told defendant he would bring another model, but defendant said he could not use it and plaintiff made no further effort. The entire claimed contract is based on what occurred at the single conference referred to. Even if the mere use of an unpatented principle or design would render the user liable in damages, this suit is not predicated on a claim of that nature. The suit is based on a claimed breach of an oral express contract. No contract has been proven. The record is convincing that if defendant had agreed to pay plaintiff $5,000 provided he used any of plaintiff's principles and designs, the defendant would thereby have agreed to pay plaintiff $5,000 if he ever built another hydroplane, because the principles and designs were largely common to all speedboats of that type. The record convinces us that there was nothing distinctive or unusual in plaintiff's principles and designs. They had been the subject of repeated patents and were mostly in common use.

The record is devoid of any convincing proof that the minds of these parties ever met. The essential requisite of a binding contract is absent.

Reversed without new trial, with costs to appellant.

CHANDLER, C. J., and NORTH, STARR, BUSHNELL, and SHARPE, JJ., concurred. BUTZEL, J., did not sit. WIEST, J., took no part in this decision.