ERMA McCUTCHEON, Plaintiff and Respondent, v. ERVIN J. LARSEN, as Administrator of the Estate of George Sturm, Jr., Defendant and Appellant.

No. 9628.
Submitted July 1, 1958. Decided Jan. 9, 1959.
Rehearing Denied Jan. 30, 1959.
333 Pac. (2d) 1013.

512

Sanders, Cresap & June, Sidney, for appellant.

Paul H. Cresap, Sidney, argued orally for appellant.

Brattin, Habedank & Cummings, Sidney, Joe Hill Jones, Dallas, Texas, for respondent.

Joe Hill Jones, Dallas, Texas, argued orally for respondent.

MR. JUSTICE ANGSTMAN:

This action is one to recover damages for the death of plain-

tiff's husband who was killed in an airplane crash on June 28, 1952.

Plaintiff charges negligence on the part of the pilot, George E. Sturm, Jr., who was also killed in the same crash.

At the time of the tragedy there were four persons riding in the airplane, which was a Beechcraft Bonanza, and they were returning to Sidney from Miles City. Upon approaching the landing strip at Sidney another airplane was landing and by reason thereof, Sturm was compelled to circle the airport and come in for a second approach to the landing strip. While doing so the airplane crashed to the ground killing all of the occupants.

The complaint charged negligence on the part of the pilot: (1) In making a right rather than a left handed approach to the landing field; (2) In having the propeller of the airplane in high rather than low pitch in approaching the landing and having the landing gear lowered before ascertaining whether a landing could be made, and before learning whether other planes were about to land and thereby causing the plane to stall and fall to the ground; (3) In failing to have the motor overhauled after 650 hours of flight; (4) In failing to keep a proper lookout for the planes lawfully using the landing strip; (5) In failing to raise the landing gear after discovering that the landing strip was occupied by another plane; (6) In making a sharp turn when the propeller was in high pitch and while traveling at a low flying speed at an altitude of approximately 200 feet; (7) In attempting to raise the nose of the plane when it was in a stalled position; (8) In piloting the plane when he was inexperienced in the operation of that type of a plane.

These allegations of negligence were put in issue by the answer and the answer contained three affirmative defenses as follows: (1) That all the occupants of the plane were engaged in a joint enterprise at the time of the crash; (2) That the crash was the result of unavoidable circumstances; (3) That plain-

tiff's husband assumed all of the risk incident to the operation of the plane.

Plaintiff denied the allegation of the affirmative defenses.

The jury returned a verdict for plaintiff in the sum of $35,000. Judgment was entered on the verdict. Defendant's motion for new trial was denied and he has appealed from the judgment.

The first assignment of error relied on by defendant is that court erred in receiving in evidence the deposition of F. K. McKlveen, Civil Aeronautics Administration Inspector, and that defendant was deprived of the right of cross-examination of this witness. It appears that when this witness was asked to give his opinion on any matter which might have been of assistance in arriving at the conclusion as to what caused the crash of the airplane his reply was:

"A. In consideration of instructions from the Chief of the International and Rules Division, Civil Aeronautics Board, Washington, D. C., under memorandum dated February 23, 1955, and signed by G. Nathan Calkins, Jr., I am not permitted to answer this question as answering it would constitute expressing an opinion or conclusion."

Defendant contends that when the witness was permitted to answer in this fashion he was deprived of the right of proper cross-examination. A complete answer to this contention is that defendant had no right to cross-examine the witness on matters not touched upon on direct examination. It should be noted that the witness did not give any opinion as an expert. He simply stated what he saw in examining the wreckage after the crash. He testified that he found the propeller in high pitch at that time. That question and answer did not involve any opinion on the part of the witness and defendant was not permitted to bring out on cross-examination matters not touched upon on direct examination.

While liberality should be exercised in allowing the right of cross-examination, Cobban v. Hecklen, 27 Mont. 245, 70 Pac. 805, yet this does not mean that cross-examination should

be allowed on matters not touched upon on direct examination. This case is not comparable to that of Herzig v. Sandberg, 54 Mont. 538, 172 Pac. 132, relied on by defendant, for in that case the witness, unlike the case before us here, had on direct examination given his opinion on a certain matter and hence cross-examination on that subject was properly held should be allowed, to test the accuracy of knowledge of the witness and his acquaintanceship with the subject about which he gave his opinion on direct examination.

It is the policy of this state that an officer and employee of ▮ the State Aeronautical Commission may not be required "to testify as an expert witness in any suit, action, or proceeding involving any aircraft." R.C.M. 1947, sec. 1-204, subd. (*l*). This is in line with the Rules of the Civil Aeronautics Board, Washington, D. C., which the courts hold properly prohibit an investigator from testifying regarding his opinions or conclusions. Universal Airline, Inc. v. Eastern Airlines, 1951, 88 U. S. App. D. C. 219, 188 F. (2d) 993; Lobel v. American Airlines, 2 Cir., 1951, 192 F. (2d) 217.

By several specifications of error defendant contends that the evidence is insufficient to support the verdict in that it fails to show negligence proximately causing the accident without indulging in speculation and conjecture.

In considering this question it should be pointed out that it ▮ is not necessary that plaintiff prove all of the acts of negligence alleged. It is sufficient to sustain the verdict and judgment if one or more of the acts of negligence was proven and that such negligence was the proximate cause of the death of plaintiff's husband. Ashley v. Safeway Stores, Inc., 100 Mont. 312, 47 Pac. (2d) 53; Pierce v. Safeway Stores, Inc., 93 Mont. 560, 20 Pac. (2d) 253; Smith v. Bonner, 63 Mont. 571, 208 Pac. 603; Hume v. Fresno Irr. Dist., 21 Cal. App. (2d) 348, 69 Pac. (2d) 483; Mitchell v. Towne, 31 Cal. App. (2d) 259, 87 Pac. (2d) 908; McMahon v. Schindler, 38 Cal. App. (2d) 642, 102 Pac. (2d) 378.

In fact the jury was so instructed.

We shall not therefore undertake to determine whether the evidence was sufficient to sustain all the acts of negligence charged.

There was evidence that the pilot attempted to make an improper landing when he observed another airplane on the landing strip, by making a 360 degree circle to the left; that a proper landing would have been to parallel the landing on the right hand side and at the proper time turn to the right and return to the proper point to again approach the landing strip. The proper landing when another airplane is using the landing strip is what is known as an "emergency recovery pattern." Mr. Sturm did not use the emergency landing pattern but instead made a 360 degree circle to the left. Because the left wing of the plane is lower than the right wing in making a circle to the left the plane loses lift and the plane loses altitude if the speed is not increased. In making the turn the evidence discloses that the plane was banked at a 75 to 80 degree angle thereby causing it to lose a great amount of lift.

One witness who observed the plane fall testified:

"The movements of the aircraft which I feel were characteristic of a stalled condition—movements which I observed the aircraft in question to make, were a dropping of the left wing, followed almost immediately by a sudden dropping of the nose of the aircraft to an angle of about 45-degrees below the horizon. These movements in this sequence are characteristic of a stall induced during a left turn."

The evidence warranted a finding that the pilot Sturm approached the landing strip with the propeller in high rather than low pitch; that a pilot has more control of his plane in low pitch rather than in high pitch; that low pitch is much the same as an automobile in low gear; that a pilot has more power at his disposal when the propeller is in low pitch and can make an immediate takeoff more easily.

The witness McKlveen, the civil aeronautics investigator, testified: "Q. Did you find that the propeller was in high pitch when you examined it? A. Yes."

There was ample evidence to sustain a finding that the pilot Sturm did not shift his propeller from high to low pitch when landing, and to sustain a finding of negligence in this regard and that such negligence was the proximate cause of the crash. Whether the evidence was sufficient to sustain other charges of negligence need not be determined.

Defendant contends that the court erred in refusing to give his offered instruction numbered 36½ which advised the jury that it could not find negligence by mere conjecture.

Other instructions given made it clear that the jury's function was to weigh the evidence and that before it could find for plaintiff it must find from the evidence that there was negligence on the part of the pilot which proximately caused the crash of the plane. There was no prejudicial error in refusing to give this offered instruction.

Defendant assigns error in the refusal to give his offered instruction numbered 26 reading:

"You are instructed, in your consideration of the evidence presented in this case, that accidents may be unavoidable and that any accident that happens is not necessarily due to some negligent or careless act, and that if you find from a preponderance of the evidence that the airplane accident herein was proximately caused by some external motivating force, other than the lack of due care on the part of the operator of this airplane, the plaintiff is not entitled to recover damages of any kind."

There was no error in this respect because the court by other instructions covered this same matter. Thus by instruction numbered 23, the jury was advised:

"By the term 'unavoidable accident' as used in this charge is meant an event which occurs without negligence on the part of any party to it proximately causing same."

And by Instruction No. 26, the jury was told:

"You are instructed that if you find, by the preponderance of the evidence, that the crash was caused by any factor or factors over which the pilot or operator had no control then you

will find that no actionable negligence, or any negligence at all, is chargeable to the operator of this airplane and that the Plaintiff is not entitled to recover damages of any kind.''

Complaint is made of the court's refusal to give defendant's offered instruction numbered 28 reading:

''You are instructed that a person who takes an airplane ride for pleasure and as a guest of the pilot, without paying for his passage, assumes a greater risk than one traveling by other means of locomotion and if you find by a preponderance of the evidence that McCutcheon was a guest passenger riding in the airplane for pleasure, the element of risk assumed should be considered in your verdict.''

This was covered by instruction numbered 13 reading:

''You are instructed that a person who takes an airplane ride for pleasure and as the guest of the pilot assumes all ordinary risks incident to the undertaking except the negligence of the pilot.''

The last assignment of error raises the question of the excessiveness of the verdict. The court instructed the jury that in assessing damages it should award such sum as would represent the fair and reasonable value of subsistence, support, care and comfort, protection, society and comfort of plaintiff, the widow, which she would have received from her husband had he not been killed.

Deceased was 43 years of age at the time of his death. He had a life expectancy of 26.8 years. During the first six months of 1952, he had earned $3,124. His earnings in 1951 amounted to $4,915. We cannot say that the verdict is so excessive as to be based upon passion and prejudice rather than upon the evidence.

The jury was better able than are we to assess damages.

The trial judge also approved of the verdict in denying the motion for new trial. We find no justification for disturbing the verdict and judgment.

The judgment is affirmed.

MR. JUSTICE BOTTOMLY, ACTING CHIEF JUSTICE, and MR. JUSTICES CASTLES and ADAIR, concur.

MR. CHIEF JUSTICE HARRISON not participating.