LORRAINE M. LANGE AND ANOTHER v. NELSON-RYAN
FLIGHT SERVICE, INC.

108 N. W. (2d) 428.

March 3, 1961—No. 38,048.

*Rischmiller, Wasche & Hedelson,* for appellants.
*L. L. Schroeder,* for respondent.

LOEVINGER, JUSTICE.

This is an appeal from an order granting defendant's motion for judgment notwithstanding the verdict. The action is to recover damages for death of plaintiff's decedent in a plane crash. The issues are whether there is adequate evidence for a finding of negligence and for holding defendant responsible if there was negligence.

Plaintiff's decedent, Wesley M. Lange, was a flyer holding a commercial pilot's license with an instructor rating, but was employed in a nonflying job. He came to defendant's place of business to rent an aircraft. Defendant rented him an aircraft but, before permitting him to fly it alone, required that he go on a checkout flight in the plane with a flight instructor employed by defendant, Ronald Percy.

The plane was a light, high-wing monoplane with two tandem seats and dual controls. Decedent occupied the forward seat and the flight instructor the rear seat. The plane took off about 10:30 a.m. Twenty-five minutes later a pilot in a plane returning to the field saw what appeared to be a wreck 1,000 to 1,500 feet east of the landing-field runway. Investigation disclosed that the wreck was the plane containing decedent and the flight instructor. It was standing on its nose in a cornfield in such attitude that it had obviously hit the ground going virtually straight down with very slight rotation to the right. Decedent was dead and the flight instructor either was dead or died a short time later without becoming conscious.

Decedent's watch was stopped at 10:36, indicating that the crash took place not long after takeoff. Decedent's feet were under the seat and his hands were over his head; while the flight instructor's left hand was near the throttle, right hand was near the stick, and feet

were positioned so as to indicate that at the moment of crash he was handling the controls.

It was stipulated that the flight instructor was acting in the course of his employment as an agent for defendant. The engine in the plane had recently been thoroughly checked; inspection disclosed that the controls were functioning properly even after the crash; and the evidence was clear that there was no malfunction of the plane. The parties agreed that there was no evidence of mechanical failure as causing or contributing to the crash. The weather was calm and clear with unlimited ceiling, visibility of more than 15 miles, and was ideal flying weather. There was light normal turbulence and only a very remote chance of thermoconvection currents in the area where the crash occurred.

This is substantially all the evidence relating directly to the accident that is in the record. There was considerable testimony as to flying characteristics of the plane, as to behavior of airplanes in stalls and spins, as to practice in conducting checkout flights, and as to responsibility of a flight instructor on such flights. However, any conclusions as to what actually happened to cause the crash must depend upon inference.

It is a tragic characteristic of airplane crashes that the accident itself frequently destroys all evidence of the cause and kills the witnesses who might have knowledge of the event. Consequently, in litigation arising out of a plane crash the rights of the parties often depend upon the attitude of the court with respect to the right of the jury to draw inferences from such evidence as has survived the disaster. There are two lines of authority in this field which take basically divergent approaches. Certainly judicial ingenuity can find distinctions between the cases on the facts. But in some of the cases refusing to permit an inference of negligence the evidence seems stronger for plaintiff than in other cases which permit the inference. Thus the decisions in this field appear to reflect essentially irreconcilable viewpoints.

The first group of cases, which includes most of the older cases, holds that in the absence of direct evidence of some specific act of

negligence, the cause of the crash is, and must remain, speculative and conjectural, and the jury cannot be permitted to infer that there was negligence.[1] Typical of such cases is Chapman v. United States[2] where the court said:

"* * * The last critical moments of the flight, * * * must, however, remain forever shrouded behind the impenetrable curtain which death has drawn. This curtain neither investigators, nor boards, nor even judges can pierce, except by speculation and conjecture, and these may not take the place of proof. Since knowledge must precede understanding, and understanding must precede judging, and we cannot know, we cannot judge what was done by the pilot that he ought not to have done, what was left undone by him that he ought to have done, it is, *we think, fatal to plaintiffs' claim that they were unable to discharge their burden of proof by presenting evidence as to what in those critical moments was happening to and within the plane.*"

A second, generally more recent, group of cases holds that even in the absence of evidence of specific acts of negligence an inference of negligence may properly be drawn from facts and circumstances which are suggestive of and not inconsistent with negligence.[3] Typical of this group of cases is United States v. Kesinger[4] where the court said:

---

[1]Chapman v. United States (5 Cir.) 194 F. (2d) 974, certiorari denied, 344 U. S. 821, 73 S. Ct. 19, 97 L. ed. 639; Budgett v. Soo Sky Ways, Inc. 64 S. D. 243, 266 N. W. 253; Madyck v. Shelley, 283 Mich. 396, 278 N. W. 110; Michigan Aero Club v. Shelley, 283 Mich. 401, 278 N. W. 121; Towle v. Phillips, 180 Tenn. 121, 172 S. W. (2d) 806; Rennekamp v. Blair, 375 Pa. 620, 101 A. (2d) 669.

[2](5 Cir.) 194 F. (2d) 974, 977, certiorari denied, 344 U. S. 821, 73 S. Ct. 19, 97 L. ed. 639.

[3]Boise Payette Lbr. Co. v. Larsen (9 Cir.) 214 F. (2d) 373, 46 A. L. R. (2d) 1038; Rogow v. United States (S. D. N. Y.) 173 F. Supp. 547; United States v. Kesinger (10 Cir.) 190 F. (2d) 529; Grimm v. Gargis (Mo.) 303 S. W. (2d) 43, 74 A. L. R. (2d) 599, and Annotation at 615; McCutcheon v. Larsen, 134 Mont. 511, 333 P. (2d) 1013, 74 A. L. R. (2d) 622, and Annotation at 628; Bruce v. O'Neal Flying Service, 231 N. C. 181, 56 S. E. (2d) 560, 12 A. L. R. (2d) 647, and Annotation at 656.

[4](10 Cir.) 190 F. (2d) 529, 531.

"* * * An airplane of a proven safe type of design taking off for an ordinary routine flight under normal weather conditions does not crash in the ordinary course of things, unless there has been a failure to properly inspect, service and maintain it, or unless it is not operated with due care."

Some of these cases invoke the doctrine of res ipsa loquitur. One such recent case points out that in the early days of aviation planes crashed frequently and mysteriously through no fault of pilot or maintenance personnel, but that technical progress of the last few years has brought the art of flying to the state where aircraft generally do not meet disaster in the absence of some negligence.[5] Other cases representing the same viewpoint permit an inference of negligence without applying the res ipsa rule where the evidence tends to exclude causes for the plane crash other than human fault.[6] Whether res ipsa loquitur is technically applicable or not, it appears more appropriate at the present time and more consonant with contemporary conditions to permit a jury to draw reasonable inferences from available circumstantial evidence as to the cause of a plane crash rather than to deny the plaintiff any possibility of relief in the absence of direct evidence of negligence or causation.

In the instant case the evidence clearly eliminated mechanical or structural failure of the plane as a cause of the crash. The evidence was strongly persuasive that there were no abnormal meteorological conditions contributing to the crash. The evidence eliminated the possibility of collision with another plane or object as a cause of the crash. The only possible inference reasonably remaining is that the crash was caused by human fault in piloting the plane. Therefore it appears, and we hold, that there was an adequate evidentiary basis for a jury finding that the plane crash was caused by some fault or negligence.

The issue then arises whether there is any basis for holding defendant responsible for such negligence. It is reasonably clear from the evidence that the flight instructor, rather than decedent, was at

[5]Rogow v. United States (S. D. N. Y.) 173 F. Supp. 547.
[6]E. g., Boise Payette Lbr. Co. v. Larsen (9 Cir.) 214 F. (2d) 373.

the controls at the moment of impact. However, this does not prove that the flight instructor was at the controls for any particular preceding period. Since the purpose of the flight was to check the competence of decedent, it might be reasonably inferred that decedent was at the controls at the time of takeoff. When the controls passed from one to the other is certainly a matter of conjecture. A number of cases involving dual-control planes have held that plaintiff cannot recover in such circumstances because of inability to prove who was flying at the time of the disastrous maneuver.[7] The learned trial judge relied upon this group of cases in ordering judgment notwithstanding the verdict.

However, our inescapable ignorance of who did what preceding the crash is not necessarily determinative of the issue of legal responsibility. The evidence is clear and uncontroverted that decedent, despite holding a pilot's license, had the status of a trainee during the checkout flight. Although a trainee, whether or not fully licensed, is responsible for his own negligence when flying solo,[8] when flying with a flight instructor a trainee is a passenger, and the responsibility of the flying school to him is measured by the legal standard of a carrier.[9] Further, the evidence in the instant case is clear and uncontroverted that the flight instructor was the pilot in command of the aircraft throughout the flight. The court instructed the jury that the pilot in command means the pilot responsible for the operation and safety of the aircraft during flight time.[10] Although the court did not instruct the jury that the pilot in command had such responsibility, this was the obvious inference and civil air regulations so provide.

---

[7]In re Estate of Hayden, 174 Kan. 140, 254 P. (2d) 813, 36 A. L. R. (2d) 1278, and Annotation at 1290; Budgett v. Soo Sky Ways, Inc. 64 S. D. 243, 266 N. W. 253; Madyck v. Shelley, 283 Mich. 396, 278 N. W. 110; Michigan Aero Club v. Shelley, 283 Mich. 401, 278 N. W. 121.

[8]LeJeune v. Collard (La. App.) 44 So. (2d) 504, 17 A. L. R. (2d) 550, and Annotation at 557.

[9]Linam v. Murphy, 360 Mo. 1140, 232 S. W. (2d) 937.

[10]The court, with the agreement of both parties, gave the jury the definition of pilot in command contained in the General Operation Rules of the Civil Air Regulations. 14 CFR (Rev. 1956) § 43.70.

Federal laws and regulations, where applicable, are, of course, binding on state courts and subject to judicial notice by state courts.[11] Part 60, 14 Code of Federal Regulations, contains the Air Traffic Rules that are generally applicable to aircraft operated anywhere in the United States, with certain exceptions not relevant here. These rules apply to intrastate flights.[12] Section 60.2 of these rules provides in part:

"The pilot in command of the aircraft shall be directly responsible for its operation and shall have final authority as to operation of the aircraft."

The civil air regulations do not, and cannot, establish rules for the imposition of liability. However, they do impose duties and responsibilities which, in effect, specify the standard of care that is imposed upon the pilot in command, which, in turn, is employed by common-law principles in defining negligence. Thus, the rule applicable to aircraft is that if the aircraft is operated in a negligent manner the pilot in command is negligent regardless of whether or not he is at the controls at the time—at least in the absence of extenuating circumstances such as sudden illness. This surely imposes a high duty and heavy burden upon the pilot in command of aircraft. However, the duty is commensurate with the skills required and the perils incurred. We take judicial notice of the difference between air traffic and travel by rail, highway, and canal.[13] The speed, the variable three-dimensional movement of aircraft in flight, the complexity of instrumentation and controls, the necessity for constant vigilance, and the ever-present threat of disaster in case of accident all require higher skills, greater precautions, and heavier responsibilities to constitute due care in the operation of aircraft than in the operation of

[11]Marshall Produce Co. v. St. Paul Fire & Marine Ins. Co. 256 Minn. 404, 98 N. W. (2d) 280; Martin v. Norris, 188 Md. 330, 52 A. (2d) 470; Morrison v. Hutchins, 158 Kan. 123, 144 P. (2d) 922; Hough v. Rapidair, Inc. (Mo.) 298 S. W. (2d) 378; see, 44 USCA, § 307.

[12]Linam v. Murphy, 360 Mo. 1140, 232 S. W. (2d) 937.

[13]Erickson v. King, 218 Minn. 98, 102, 15 N. W. (2d) 201, 203.

land or water vehicles.[14] These considerations make it appropriate that the pilot in command have complete authority to control the operation of the aircraft in flight and that he have corresponding responsibility.

In other situations requiring high skills and involving grave dangers, similar responsibilities are imposed. Thus the surgeon in an operating room is responsible for the negligent or unskillful acts of a nurse or other person assisting him in the operation,[15] and the master of a ship at sea is responsible for the conduct of his crew and for the negligence of all employed on board.[16]

The evidence in the instant case is clear and uncontroverted that on a checkout flight, even of a commercial pilot, the pilot being checked out assumes a trainee status and the flight instructor is the pilot in command. Consequently if there was negligence in the operation of the plane, it was proper for the jury to find the flight instructor, Percy, as the pilot in command, responsible for this negligence, and therefore to hold the defendant liable.

Defendant argues that the decedent was guilty of negligence, or contributory negligence, and that this was the proximate cause of the crash. The difficulty with this argument is that there is no evidence whatever from which an inference in its support can be drawn. Although there was evidence from which the jury was justified in believing that there had been negligence in the operation of the plane, there was no evidence from which the jury could reasonably infer which of the two men in the plane was actually operating the controls at the time that the fatal fault occurred. Since both men were killed in the accident, the statutory presumption of due care is of no assistance in the situation.[17] However, by the rules of law applicable

---

[14]See, Hough v. Rapidair, Inc. (Mo.) 298 S. W. (2d) 378.

[15]See, Swigerd v. City of Ortonville, 246 Minn. 339, 75 N. W. (2d) 217, 72 A. L. R. (2d) 398; St. Paul-Mercury Ind. Co. v. St. Joseph's Hospital, 212 Minn. 558, 4 N. W. (2d) 637.

[16]*The Newport* (9 Cir.) 15 F. (2d) 342, affirmed in part, sub nom. Wilson v. Pacific Mail S. S. Co. 276 U. S. 454, 48 S. Ct. 369, 72 L. ed. 651; 80 C. J. S., Shipping, §§ 64, 70b.

[17]Minn. St. 602.04.

to air traffic, we are able to determine that the pilot in command was responsible for the negligence in any event, and regardless of whether or not he was in actual operation of the controls at the time. No such principle is applicable to the person being carried as a passenger regardless of whether or not he was an unlicensed trainee or a pilot on a checkout flight. It might, indeed, be argued that the passenger, whether being trained or checked out, might properly rely upon the superior skill and knowledge of that particular aircraft of the pilot in command, and therefore might not be barred from recovery by an unskillful or careless act. However, no such issue is presented here, and therefore we do not consider or attempt to pass upon this point. It is enough that the evidence affords an evidentiary basis for an inference that the plane was negligently operated and that by the applicable regulations and rules of law, the pilot in command may be held responsible for negligent operation of the plane. In this view the verdict of the jury was proper, and judgment should have been entered thereon.

Reversed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that the verdict rested upon evidence so speculative and conjectural that the trial court was correct in setting it aside.

KNUTSON, JUSTICE (dissenting).

I concur in the dissent.