CLYLE LINAM, Appellant, v. JOHN I. MURPHY II, and CHARLES E. WEESE, Respondents, No. 41663—232 S. W. (2d) 937.

Division One, September 11, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, October 9, 1950.

*James L. Paul, Watson, Richart & Titus, Ray E. Watson, F. H. Richart* and *Rex Titus* for appellant.

1142

*Norman, Foulke & Warten* for respondents.

1144

 LOZIER, C.—Appellant (hereinafter called plaintiff) sued Murphy and Weese, respondents (hereinafter called defendants) and Cooke for $25,000 for personal injuries. None of the 3 defendants below offered evidence, and, at the close of the case, each moved for a directed verdict. Murphy's and Weese's motions were sustained, verdicts in their favor were directed, Cooke's motion was overruled and plaintiff had verdict and judgment against Cooke for $25,000. Plaintiff has appealed, assigning as errors: sustainment of defendants' motions and rejection of certain evidence.

The uncontradicted facts were: Defendants were partners, owning and operating the Joplin Air Service, at the Joplin Municipal Memorial Airport. In their answers, defendants admitted that Cooke was in their general employ "as an instructor in the art of flying"; that it was his duty "to perform such duties as were assigned to him by his employers, and that from time to time, he was instructed to and did give instructions to customers or students in the art of flying, at the request of his employers."

Plaintiff was a 28 year old World War II veteran. About a year prior to the accident he had been enrolled with defendants for a 4 year private pilot training course under the "G. I. Bill of Rights," for which the government paid defendants $11 for each of plaintiff's credit hours. In order that his training might not interfere with plaintiff's regular job as an automobile mechanic, it was given at such times as plaintiff found convenient. Prior to the day of the accident, plaintiff had had about 38 hours flight time, most of which had been earned on Sundays. Both defendants gave plaintiff some instruction but most of the training was given him by Cooke.

About 4 p. m., Sunday, July 11, 1948, plaintiff came to defendants' office for further training. Both defendants and Cooke were in the office. Weese instructed Cooke to take plaintiff "out for some dual instruction." The two went to one of defendants' dual control training planes of the type in which plaintiff had received all previous in-the-air training. Plaintiff took his usual position in the front seat and Cooke, after starting the motor, got into the rear seat. Cooke took the controls and taxied the plane into the wind and plaintiff, under Cooke's directions and according to their usual practice, took the controls and handled the plane during the take-off. In the air, Cooke said to plaintiff, "Let's fly down to Noel and look the water over." Plaintiff then turned the plane and flew south. Over Ginger Blue, 5 or 6 miles north of Noel, Cooke said, "Let me have it," and took the controls. Cooke did not tell plaintiff that he was taking control for purposes of instructing plaintiff nor that what he (Cooke) was about to do was a part of plaintiff's course of training. From then on, Cooke was in full and exclusive control of the plane. Plaintiff had no part in its operation and did nothing to interfere with Cooke's handling of the dual controls.

Cooke circled, lost altitude and "buzzed" Rocky Beach, south of Ginger Blue, where people were swimming. The plane was 10 feet above the water. He then gained altitude and flew south of Noel. From the state highway bridge over Elk River he flew downstream, turned below the dam (about one-fourth mile below the bridge), lost altitude, flew upstream, and "buzzed" the dam, the bridge and the town of Noel. Between the dam and the bridge he flew at an altitude only a little higher than the tops of the trees at the ends of the dam. Plaintiff asked Cooke to "get up and fly at a higher altitude before we run into something," and said, "Let's get out of here and fly like we are supposed to." Cooke replied, "Don't worry; you know I am not going to hurt myself. Take it easy." Cooke regained altitude but was up only about 500 feet when "buzzing" the bridge and the town. He then again circled, flew downstream, turned around below the dam and flew upstream at an altitude lower than that of his first upstream trip. When he "buzzed" the dam the second time the plane was not over 40 feet above the structure. This time, before he reached the bridge, the plane struck the wires of a power line over the river, began "vibrating and losing pieces" and plunged into the stream. As a result, plaintiff sustained the injuries for which he claimed damages.

Plaintiff's own testimony as to the plane's altitudes and movements on both upstream trips was corroborated by the following witnesses: a power company employee who lived at the dam; a fisherman in a boat near the place where the plane hit the water and who rowed plaintiff and Cooke to shore; and the driver of an automobile on the highway.

The plane's instruments (gauges, compass, altimeter, tachometer, etc.) were in front of plaintiff. They could not be seen by Cooke without leaning forward and looking over plaintiff's shoulder. Apparently, Cooke never once looked at the instruments, including those which showed the plane's speed and altitude.

An experienced pilot (for 20 years a flyer of commercial aircraft, and of military planes during World War II, and who had spent over 1000 hours in instructing student pilots) defined "buzzing" as "maneuvers of aircraft close to the ground, or close to objects on the ground at a speed in excess of normal cruising speed, usually accomplished by diving on objects and then pulling up in a sharp climb." It was his opinion that "buzzing was not in harmony with good flying practice with a student or passenger on board"; and that while "buzzing" had a function in combat, it was no part of a civilian pilot training course.

This is not a *res ipsa loquitur* case. The cause of the accident is not questioned. Both occupants of the plane are still alive and the facts are not in dispute. The uncontradicted evidence was that Cooke had exclusive control of the plane, and that his negligent

operation was the sole proximate cause of plaintiff's injury. Consequently, rulings in dual control plane *res ipsa loquitur* cases have no application. See Rhyne, Aviation Accident Law, pp. 94, 95, 96, 121, 133, 134, 135, citing: Herrick v. Curtiss Flying Service, 1932 U. S. Av. R. 110, 1 Avi. 369, not officially reported; Parker v. Jas. E. Granger, Inc., 4 Cal. 2d 668, 52 P. 2d 226; Towle v. Phillips, 180 Tenn. 121, 172 S. W. 2d 806; Whittemore v. Lockheed Aircraft Corp., 51 Cal. App. 2d 605, 125 P. 2d 531, 149 P. 2d 212, 65 Cal. App. 2d 737, 151 P. 2d 670; Madyck v. Shelley, 283 Mich. 396, 278 N. W. 110; Mich. Aero Club v. Shelley, 283 Mich. 401, 278 N. W. 121; McInnerny v. McDougall, 47 Man. Rep. 119, 3 W. W. R. 625, 1938 Av. R. 166, 1 Avi. 718; Budgett v. Soo Sky Ways, Inc., 64 S. D. 243, 266 N. W. 253; Morrison v. LeTourneau Co., (C. C. A. 5th) 138 F. 2d 339; and Wilson v. Colonial Air Transport, Inc., 278 Mass. 420, 180 N. E. 212. See also Hotchkiss, Law of Aviation, 2d Ed., pp. 50 ff., and Hall v. Payne, 189 Va. 140, 52 S. E. 2d 76.

The master and servant relationship between defendants and Cooke, and that the latter's duties including training of student pilots, were admitted. Defendants' requests for directed verdicts were based upon the theory that Cooke was not their employee "at the time of plaintiff's injuries, or if an employee, was at the time of plaintiff's injuries, not acting within the scope of his employment, but for his own amusement and for his own purpose."

"The recognized rule is that an employer is liable to a third person for any injury to either person or property which results proximately from tortious conduct of an employee acting within the scope of his employment, * * * . If, however, the servant or agent does a wrongful act without authority, and not for the purpose of executing the orders or doing the work of his employer, the latter is not responsible therefor." 35 Am. Jur., pp. 983, 984.

There can be no dispute as to the relationship between plaintiff and defendants. He was not their employee. He was one of the other parties to a contract which defendants had entered into with him and the United States government. For their services to plaintiff defendants were paid by the government. On that particular flight, plaintiff was neither a bailee or a charterer of the plane nor defendants' or Cooke's guest. Defendants' liability to plaintiff is that of a carrier rather than a master. See 35 Am. Jur., p. 1015.

While defendants were not insurers of plaintiff's safety, they had assumed the duty of giving him an adequate course of pilot training by competent instructors and with suitable equipment. See 49 USCA Sec. 557. This included compliance with Civil Aeronautics Board rules and regulations. See 49 USCA Sec. 645. The degree of care required of defendants was that "prescribed by the familiar common law principles of negligence." Rhyne, Aviation Accident Law, pp. 58, 59. See also Fixel, Law of Aviation, 3rd Ed., pp. 370 ff.;

and Hotchkiss, Law of Aviation, 2d Ed., pp. 46 ff. See also Annos.: 99 ALR 173; 83 ALR 333; and 69 ALR 316. See also Kasanof v. Embry-Riddle Co., 157 Fla. 677, 26 So. 2d 889; and Long & Dible v. Clinton Aviation Co., (C. C. A. 10th) 180 F. 2d 665.

It is not necessary to determine whether an airplane is such a "dangerous instrumentality" as to fix liability upon defendants if Cooke's "buzzing" was without the scope of his employment. See 57 CJS p. 314, and 35 Am. Jur. p. 976.

On this occasion, defendants had specifically instructed Cooke to take plaintiff up in a training (dual control) plane "for some dual instruction". On these training flights, Cooke had full authority over the plane's operation. We do not have to infer that Cooke was in control. See Bruce v. O'Neal Flying Service, Inc., 231 N. C. 181, 56 S. E. 2d 560. As plaintiff's instructor he could, and did, turn over to and take away from plaintiff control of the plane. He ordered the direction of flight when plaintiff had the controls. Plaintiff had no right to refuse to relinquish control when Cooke demanded it nor to interfere with Cooke's handling of the dual controls after plaintiff had relinquished them.

Defendants had not turned over the plane to Cooke for his personal use and pleasure. In taking over the controls he was acting within the scope of his employment, no matter what his motive may have been. He was still acting within the scope of his employment thereafter when he continued to operate the plane. Obviously, Cooke's duty to his employers (and his employers' duty to plaintiff) required him to operate the plane after he had exercised his authority in taking over the controls. His operation of the plane was "not clearly foreign to the nature and scope of his employment," as urged by defendants. See 35 Am. Jur. pp. 995, 996. There was no "direct route" from which he could deviate for his own purposes. See Sullivan v. Thurman, (Mo. App.) 266 S. W. 745.

In our opinion, it was impossible for Cooke to have "deviated" from or gone without the scope of his employment from the time the plane took off from the Joplin airport. We rule that Cooke was still acting within and had not departed from the scope of his employment *when he continued to operate the plane* after he had ordered plaintiff to release the controls, and that the trial court erred in not submitting this issue to the jury.

It does not suffice to say that Cooke took the controls for the purpose of "going on a frolic of his own" and then "did the buzzing" for his personal enjoyment. His motive is not material if he was still engaged in defendants' business and *if* his acts in taking the controls and thereafter operating the plane were part of his duties and within the scope of employment. Nor does it suffice to say that after he took the controls the subsequent "buzzing" was done for his own enjoyment. So long as the act or omission is done in the per-

formance of the master's business *as well as* "for fun," such an act or omission is deemed to be within the scope of employment. 57 CJS pp. 328, 329. See Byrnes v. Poplar Bluff Prtg. Co., (Mo. Sup.) 74 S. W. 2d 20.

Nor does it suffice to say that Cooke may have been violating defendants' instructions. We will assume that defendants had instructed Cooke not to "buzz" objects when he had the controls of a training plane with a student in the other seat. (We note that there was no evidence that defendants had so instructed Cooke nor any evidence of what instructions, if any, they had given him as to how he was to operate the plane. Plaintiff testified as to the type of instruction he was supposed to receive, and "buzzing" was not included. But there was no evidence that defendants had instructed Cooke not to "buzz" when he was in control and was not engaged in instructing a student.) Violation of the master's instructions does not relieve the master from liability for the negligent acts of the servant done within the scope of the latter's employment. 57 CJS pp. 312, 313. See Riggs v. Higgins, 341 Mo. 1, 106 S. W. 2d 1; and Liberty Mutual Ins. Co. v. Boggs, (Tex. Civ. App.) 66 S. W. 2d 787.

Defendants cite 3 cases. In Galveston, H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, the roundhouse foreman (who, while operating a compressed air hose in the performance of his duties, playfully turned it on his subordinate) was acting solely for his own enjoyment and was not operating the hose in furtherance of the master's business. In Smothers v. Welch & Co. House Furnishing Co., 310 Mo. 144, 274 S. W. 678, the conduct of the clerk (who attempted to rape a woman customer) was obviously not within the scope of his employment or in furtherance of the master's affairs. In both cases the employee's act was not done *both* for personal pleasure *and* in the conduct of the employer's business.

Sheboygan Airways v. Industrial Comm., 209 Wis. 352, 245 N. W. 178, appears to be authority for defendants' position. The action involved the workmen's compensation claim of the representatives of a pilot killed in a power dive. The dive may have been at the request, or at least with the consent, of the two passengers in the plane. In any event, we do not agree with the general statements that the mental attitude of an *airplane pilot* "of stepping aside, even momentarily,—turning the attention to the accomplishment of a purpose solely outside of that of promoting the object of the employment, effectually breaks the connection between the servant and the master"; or that because *an airplane pilot* was not employed to power dive (or "buzz"), his doing so automatically takes him beyond the scope of his employment.

We repeat that the liability of the owner or operator of an airplane to paid passengers, guests or student pilots is to be determined by the general principles relating to negligence. See Bruce v. O'Neal

Flying Service, Inc., supra. Even in instances involving horse-drawn or land automotive vehicles, the application of these principles to the circumstances of each case is sometimes difficult. "Aerial travel is not confined to roads, rails, rivers or canals." Erickson v. King, 218 Minn. 98, 15 N. W. 2d 201. The very natures ■■■ of airplanes, of air travel and of the responsibilities of airplane pilots are such that previous applications of these rules to particular facts (in the horse-drawn, automobile and railroad engine cases) are often of little aid. So we limit our ruling to the facts here: A pilot instructor, on a training flight in a dual control plane who took the controls and, despite the student pilot's protest and without his interference with the controls, operated the plane for his own personal thrill, was acting within the scope of his employment, and his employers are liable to the student for injuries resulting from their employee's negligent operation of the plane.

Plaintiff next contends that he made a submissible case (as to Cooke's scope of employment) by showing defendants' ownership of the plane and the agency of the pilot. Defendants counter by saying: "Proof of ownership only raises a procedural presumption that the operator is acting within the scope of employment for the owner. When evidence appeared in their case, showing that there was a departure from the scope of the employment, the *prima facie* case disappeared, for the court on a motion for a directed verdict must consider the case on the whole evidence." Having found that plaintiff's evidence made a submissible case on this issue, we rule this point against defendants. See Berry v. Emery, Bird, Thayer D. G. Co., 357 Mo. 808, 211 S. W. 2d 35; State ex rel. Waters v. Hostetter, 344 Mo. 443, 126 S. W. 2d 1164; and Ross v. St. L. Dairy Co., 339 Mo. 982, 98 S. W. 2d 717. See also 2 Mo. Law Review 213.

■■ Out of the presence of the jury, one of plaintiff's witnesses, a newspaper reporter, stated that on the day after the accident, in response to his telephone inquiry about the accident, Cooke had stated that he (Cooke) was a flight instructor, plaintiff was a student and "it was a training flight." After the court had indicated that he thought the testimony inadmissible, plaintiff made no offer and excused the witness. The court properly would have rejected this evidence had plaintiff offered it. As to defendants, it was hearsay evidence of Cooke's agency by the declarations of the agent himself. See Lanham v. Vesper-Buick Auto. Co., (Mo. App.) 21 S. W. 2d 890; and State ex rel. Massman v. Bland. 355 Mo. 17, 194 S. W. 2d 42. It was also an attempt to show by the agent's declarations, that his act was within the scope of his employment. 57 CJS p. 406. Plaintiff concedes that the statements were not part of the res gestae. See Renfro v. Central Coal & Coke Co., 223 Mo. App. 1219, 19 S. W. 2d 766; and State ex rel. Massman v. Bland, supra. And (noting also that this evidence was cumulative) the statements did not relate to

1150

Cooke's intent in "buzzing" the plane. See 31 CJS pp. 1005 ff.; and Mattan v. Hoover Co., 350 Mo. 506, 166 S. W. 2d 557. We rule this assignment against plaintiff.

Plaintiff pleaded Cooke's violations of certain safety rules promulgated by the Civil Aeronautics Board under the provisions of 49 USCA, Chap. VI, and especially Sec. 551. Defendants' answer denied the application of the rules on the ground that the plane was not then "engaged in interstate commerce." Such rules are applicable to planes in intrastate commerce. 2 CJS, p. 905; Rosenhan v. U. S., (C. C. A., 10th) 131 F. 2d 932; U. S. v. Drumm, 55 F. Supp. 151; and Maitland v. Twin City Aviation Corp., 254 Wis. 541, 37 N. W. 2d 74.

However, plaintiff did not offer the CAB rules in evidence. He offered to show by one expert witness that Cooke "maneuvered the airplane at an altitude below safe minimum from a standpoint of CAB Rules and Regulations." The trial judge properly rejected this offer. Assuming, but not deciding, that the court could take judicial notice of these rules (see 44 USCA Sec. 307, and cases cited), the opinion of this witness was as to ultimate facts to be found by the jury, viz., whether Cooke violated the rules and whether such violation was negligence. We rule this assignment against plaintiff.

As the court erred in sustaining defendants' motions for directed verdicts, the cause should be and is reversed and remanded. Van Osdol and Aschemeyer, CC., concur.

PER CURIAM:—The foregoing opinion by LOZIER C., is adopted as the opinion of the court. All the judges concur except Hollingsworth, J., not voting because not a member of the court when the cause was submitted.