(564 P.2d 588)
No. 48,434

GENE R. WALKER, *Appellant,* v. IMPERIAL CASUALTY AND INDEMNITY COMPANY, *Appellee.*

Petition for review denied July 11, 1977.

Opinion filed May 20, 1977.

*Orval L. Fisher,* of Wichita, for the appellant.

*Jerry G. Elliott* and *Mikel L. Stout,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellee.

Before ABBOTT, P.J., FOTH and SPENCER, JJ.

ABBOTT, J.: This is an appeal by plaintiff-appellant from a judgment denying recovery under a travel accident insurance policy for the death of an insured student pilot who was killed while receiving instruction in a dual-control aircraft.

Plaintiff is the father of the insured student pilot, Steven G.

Walker, and the designated beneficiary in the insurance policy in issue. Prior to his death, Steven G. Walker purchased a travel accident policy from appellee. The policy provided in pertinent part for indemnity for loss of life caused by accident "[w]hile the insured is riding as a passenger (and not as an operator) in, boarding or alighting from any air, land or water common carrier . . ." A "common carrier" is defined in the policy as "any air . . . vehicle licensed to carry passengers for hire."

Walker was taking flying instructions from American Aviation, Inc. At the time of his death, he had logged 32.5 hours of flight time as a student pilot. He had soloed but was not a licensed pilot, nor was he qualified to obtain a pilot's license.

At approximately 2:45 p.m. on July 26, 1974, Walker departed Kansas City Municipal Airport, Kansas City, Missouri, in a dual-control aircraft with his flight instructor, Joseph D. Earl. No flight plan was filed. Some thirty minutes after takeoff, permission was requested of the control tower operator to make touch-and-go landings. One touch-and-go landing had been completed when several witnesses observed the aircraft near the south end of runway 18 climbing out of takeoff, southbound from Kansas City Municipal Airport. The takeoff appeared normal until the aircraft reached an altitude of several hundred feet when the aircraft entered a climbing right turn. Almost immediately, the nose of the aircraft dropped sharply to the right, went into a spin, and crashed into the dry river bed. Both Walker and Earl died in the crash. Earl's body was found in the right front seat where the flight instructor normally sits with one set of the dual controls available. Walker's body was in the left front seat where the student pilot normally sits with the other set of dual controls available to him. No evidence was offered, nor available, as to which person was actually flying the aircraft at the time it crashed. The purpose of the fatal flight was for Walker to learn to operate the aircraft, to practice operating the aircraft, or to actually operate the aircraft.

American Aviation, Inc., was licensed to give flight instructions. It was not licensed to carry passengers for hire in any capacity other than to give flight instructions. The aircraft that crashed was owned by American Aviation, Inc., and it would have been eligible to be used as an air taxi had American Aviation, Inc., been licensed to conduct an air taxi service.

At the time of the accident, American Aviation, Inc., charged $15 an hour for the use of the plane and $7.50 an hour for the instructor. It was possible to rent the plane without an instructor if the pilot were properly qualified and licensed to operate without an instructor. Walker was not qualified to operate the aircraft on the date of the accident without a flight instructor along. Earl was the pilot in command. A student pilot cannot be a pilot in command when a flight instructor is in the aircraft with him. Both pilots log all of the flight time when the student pilot is receiving instruction.

The trial court found that Steven G. Walker ". . . was not riding as a passenger in any common carrier as defined in the insurance policy at the time he sustained injuries and resulting death. . . ." and denied recovery under the travel accident insurance policy.

The insurance contract was entered into in Missouri, and the loss giving rise to this lawsuit occurred in Missouri. The substantive law of the state of Missouri will be applied and all parties so agree.

Three of the alleged errors appellant relies on as grounds for reversal of the judgment can be considered together. The errors alleged are that the trial court erred (1) in construing the insurance policy as limiting and excluding coverage afforded to the insured, (2) in finding and holding that the airplane in which plaintiff was receiving flight instruction for hire was not a common carrier as defined in the insurance policy, and (3) in finding and holding that the deceased, Steven G. Walker, was riding as an operator and not as a passenger at the time he sustained injuries and resulting death.

An insurance policy can be construed only when the language of the policy is equivocal, indefinite, or ambiguous (44 C.J.S., Insurance, Sec. 290, p. 1139). If the language is clear or unequivocal, there is no occasion for construction (*Barrett Plaza, Inc. v. Northwestern Mutual Ins. Co.*, 411 S. W. 2d 265 [Mo. App. 1967]).

Appellant relies on *Linam v. Murphy*, 360 Mo. 1140, 232 S. W. 2d 937 (1950), and *Lange v. Nelson-Ryan Flight Service, Inc.*, 259 Minn. 460, 108 N. W. 2d 428 (1961), to support his contention that the insured was a passenger and not an operator. The *Linam* case involved an agency question relating to the liability of the

instructor pilot for injuries the student pilot received in a plane crash. While on a training flight, the instructor pilot took control of the plane and despite the objections of the student pilot "buzzed" two towns, a bridge, and a dam at an altitude lower than that of tree tops. The flight ended when the aircraft hit a power line. The Missouri court held that the instructor pilot had the right to take over the controls and that the instructor pilot and his employers were liable for the instructor pilot's negligence. The undisputed evidence was that the instructor pilot had exclusive control of the plane and his negligence was the sole proximate cause of plaintiff's injuries. A cursory reading of *Linam*, supra, reveals the word "passenger" is used but once in the entire opinion, and then only when the court stated: "We repeat that the liability of the owner or operator of an airplane to <u>paid passengers, guests or student pilots</u> is to be determined by the general principles relating to negligence. . . ." (Underscoring supplied.)

In *Lange*, supra, the issue was one of permissible inferences for liability. The court simply held that if there was negligence in the plane's operation, the pilot in command, like a ship's captain, or a surgeon, is responsible for that negligence. The *Lange* case states a distinct minority view and probably is the only case in the United States so holding. (*Udseth v. United States*, 530 F. 2d 860 [10th Cir. 1976].)

Appellant also relies on *Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571. *Braly* held that an employee could be a passenger on an employer's elevator and that whether such conveyance was a passenger elevator, within the meaning of that term as used in the policy, was one of fact and properly submitted to the jury. The trial judge heard the evidence and considered the stipulations in this case and found against appellant, and there is sufficient evidence to support the trial court.

The court, where the policy is not ambiguous, should not impose risks not assumed by the insurance company under the guise of liberal interpretation of the wording of the policy. "Words employed in contracts of insurance are to be construed according to the meaning of the terms used, and are to be taken and understood in their plain, ordinary and usual sense, so as to give effect to the intention of the parties. . . ." (*Youse v. Employers Fire Ins. Co.*, 172 Kan. 111, 238 P. 2d 472, Syl. 1.)

There is no ambiguity in the meaning of the word "passenger"

or the phrase "and not as an operator" when read in context with the entire insuring agreement. The term "passenger," when construed in accordance with the ordinary and popular meaning of the entire policy language, limits the term to mean a nonoperator of an aircraft (*Paul Revere Life Ins. Co. v. First National Bank in Dallas*, 359 F. 2d 641 [5th Cir. 1966]) whom a common carrier, as defined in the policy, has contracted to carry from one place to another and has, in the course of the performance of that contract, received the person in its care. (Black's Law Dictionary 1280 [4th ed. rev.].)

Likewise, the phrase "and not as an operator" is not ambiguous. An operator takes an active part in operating the aircraft as opposed to the passive role of a passenger. The term "operator" denotes something less than a pilot in command or actual pilot.

A student pilot taking a flying lesson from a qualified instructor and logging time as a student pilot is participating as an operator of the aircraft and is not a passenger within the meaning of the insurance policy. (*Kinard v. Mutual Benefit Health & Accident Ass'n*, 108 F. Supp. 780 [W. D. Ark. 1952]; *Travelers Ins. v. Warner*, 169 Colo. 391, 456 P. 2d 732 [1969]; *Smith v. Prudential Insurance Company of America*, 300 S. W. 2d 435 [Mo. 1957]; *Ohio Cas. Ins. Co. v. Gantt*, 256 Ala. 262, 54 So. 2d 595 [1951]; and *Spiess v. United Services Life Insurance Company*, 348 F. 2d 275 [10th Cir. 1965].)

The insurance policy's definition of a "common carrier" borders on being ambiguous. The policy defines the term "common carrier" as meaning "any air, land or water vehicle licensed to carry passengers for hire." An aircraft is certified airworthy by its manufacturer and that certificate is updated by periodic inspections and maintenance. The type of use made of the plane determines inspection and maintenance schedules. The requirements for inspection and maintenance for an aircraft used as an air taxi and an aircraft used to train student pilots are the same. Thus, the aircraft involved could have been used as an air taxi had it been owned by or leased to one holding a license to conduct an air taxi service. Pilots and companies are licensed to transport persons and cargo. American Aviation, Inc., was not licensed to transport passengers for hire. It was not licensed to conduct an air taxi service. Walker could not have employed American Aviation, Inc., to fly him around on a pleasure flight or from point A to

point B. The deceased insured could, and did, employ American Aviation, Inc., to teach him to fly, and it was in the process of doing so. According to Walker's pilot log, he had 10.4 hours of solo time, and he would have been able to fly without his instructor actually being in the aircraft had it not been for the fact that he had not flown for over ninety days. Walker had studied aviation licensing requirements and was well aware of federal licensing requirements. How to determine the intention of the parties to an insurance contract is clearly stated in *Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 483 P. 2d 1072, as follows: "In determining the intention of the parties to a contract of insurance, the test is not what the insurer intends the printed language to mean, but rather what a reasonable person placed in the position of the insured would have understood the words to mean." (Syl. 2.) We look only to what a reasonable man in Walker's position would have understood and have no difficulty in concluding Walker well understood he was not in an aircraft licensed to carry passengers for hire and well understood he was not a passenger but was participating as an operator. Plaintiff's own witness, who was a professional pilot and federal aviation examiner, testified that a student pilot while in the aircraft is participating in the operation of the aircraft. It is apparent to any reasonable man that Walker would not have paid the fee he paid merely to be a passenger with no right to participate in the operation of the aircraft.

It is not necessary to ascertain who was actually at the controls of the aircraft when it fell from the sky. In the absence of direct evidence, the party who must prove which of the two pilots was flying a dual-control aircraft at the crucial time has an impossible burden. Thus, we are not called upon to decide, and do not decide, whether an insured has the burden of proof to show he comes within the risk insured against as opposed to the insurer's clear duty to prove an insured falls within an exclusionary clause in a travel accident policy.

Appellant further alleges trial error in failing to make findings and rulings on the material issues consistent with the evidence and in overruling plaintiff's motion to alter and amend and make additional findings, all as set forth with particularity in appellant's motion to the trial court. We have examined the motion and are of the opinion the trial judge correctly ruled thereon on all

material points. Many of the requested findings of fact are immaterial to this decision, and a specific finding of fact in appellant's favor would be of no benefit to him.

The trial judge did not err in finding the deceased insured was not riding as a passenger, as opposed to an operator, in a common carrier as defined in the insurance policy at the time the insured was killed in the aircraft accident.

Affirmed.