**Barbara HANSON, Appellant,**

v.

**CONTINENTAL INSURANCE
COMPANY, Respondent.**

**No. KCD30028.**

Missouri Court of Appeals,
Kansas City District.

Oct. 30, 1978.

Max W. Foust, G. Spencer Miller, Morris & Foust, Kansas City, for appellant.

Kenneth O. Smith, Knipmeyer, McCann, Fish & Smith, Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Plaintiff sues to recover accidental death benefits under a group policy issued by defendant, under which plaintiff's deceased husband, Harlan M. Hanson, was one of those insured. Plaintiff also seeks penalties for vexatious refusal to pay. Defendant defends on the basis of a clause in its policy excluding injuries incurred while flying in a military aircraft under specified circumstances. Both parties moved for summary judgment. The trial court entered judgment for defendant, from which plaintiff appeals.

The facts are stipulated. Hanson was a member of a National Guard Unit in North Dakota. On July 14, 1973, he was present at Logan Field in Billings, Montana, where he was permitted to become a passenger in a helicopter owned by the United States and in the possession of the Montana National Guard. The helicopter in question was being flown by Keith Iverson, a member of the Montana National Guard, on an approved flight performing equivalent training and he had obtained approval for the use of the helicopter from the proper authorities. However, Iverson did not file a flight plan, although that was required under Standard Operating Procedure of the Montana Army National Guard and the applicable Army Regulation.

During the course of the flight, Iverson engaged in low level or "nap-of-the-earth flying." While so engaged, the helicopter came in contact with a power line causing demolition of the aircraft and fatal injuries to Hanson. Army Regulations provided that when Army aircraft was engaged in nap-of-the-earth flying or similar hazardous training flights, "passengers should be limited to those personnel with a specific need to participate." At the time of the fatal flight in question, Hanson was not on duty and he had no specific need to participate in nap-of-the-earth flying.

Defendant's policy contained an exclusion clause as follows: "This policy does not cover loss caused by or resulting from any one or more of the following: * * * Travel or flight in any vehicle or device for aerial navagation, * * * while being operated by or for or under the direction of any military authority * * *." The debate in this case turns upon whether the fatal flight was "by or for or under" direction of military authority. Plaintiff says it was not but can cite no insurance case or other authority for that contention. On the other hand, defendant has cited no such authority to the contrary and independent research has disclosed no authority construing a similar policy provision.

■ In the apparent absence of any direct authority on this point, plaintiff seeks to draw an analogy to the cases where an employee makes a serious deviation for his own personal purpose from a route which he is supposed to follow in carrying out his employer's business. Under those circumstances, the employee may be said to have gone beyond the course and scope of his employment. Plaintiff attempts to argue by analogy that Iverson went beyond the scope of Army authorization by reason of his violation of the applicable Standard Operating Procedure and Army Regulations.

To the extent that the employer-employee cases are pertinent, the case closest in point is *Linam v. Murphy,* 360 Mo. 1140, 232 S.W.2d 937 (1950). In that case an airplane flying instructor took control of a dual control training plane from the student pilot and the instructor then engaged in a frolic of his own and "buzzed" a beach, dam, bridge and town for his personal enjoyment. During this episode the plane crashed, and the student sustained injuries for which he claimed damages. The court held the employer to be responsible for the instructor's acts even though the instructor may have been violating standing instructions. In this respect the Supreme Court stated at l.c. 942:

"Nor does it suffice to say that Cooke may have been violating defendants' instructions. We will assume that defendants had instructed Cooke not to 'buzz' objects when he had the controls of a training plane with a student in the other seat. * * * Violation of the master's instructions does not relieve the master from liability for the negligent acts of the servant done within the scope of the latter's employment."

See also the many cases collected in Missouri Digest, Master & Servant, ⬅ No. 305.

By analogy to *Linam,* as well as on general principle, we hold that the failure of Iverson to follow strictly the pertinent rules and regulations did not prevent the flight from being an operation "by or for or under" the direction of military authority. This case therefore falls within the exclusion clause upon which defendant relies.

**152**

Plaintiff argues that this exclusion clause is at best ambiguous. However, we agree with the following ruling by the trial court: "The quoted policy language employs words in common usage, none of which requires definition or elaboration. * * * the language of the exclusion clause is plain and unambiguous and as such, it must be accorded its own meaning in the ordinary and popular sense." *State Farm Mutual Auto. Ins. Co. v. Thomas,* 549 S.W.2d 616 (Mo.App.1977); *Galemore v. Haley,* 471 S.W.2d 518 (Mo.App.1971).

Inasmuch as defendant was justified in its refusal to pay, that refusal a fortiori could not be vexatious.

Affirmed.

All concur.