**Kris WOODARD and Timothy Burton, Plaintiffs,**

v.

**HARDEE'S RESTAURANT and Phil Jacobs, Defendants.**

No. 85–0284–CV–W–5.

United States District Court,
W.D. Missouri, W.D.

July 7, 1986.

Thomas R. Bellmann, Jeans, Bellmann & Fletcher, Kansas City, Mo., for plaintiffs.

Major W. Park, Jr., Rosalee A. Miller, Gage & Tucker, Kansas City, Mo., for defendants.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Pending before the Court is a motion for attorney's fees filed by plaintiffs Woodard and Burton. For the reasons set forth below, this motion will be sustained in the amount of $11,590.00. This attorney's fee award will run against defendants Jacobs and Hardee's jointly and severally.

■ 1. Defendants' first point is that plaintiffs should not be allowed any attor-

ney's fee under § 1988. Defendants base this contention on their suspicion that the jury already compensated plaintiffs for their attorney's fees herein. There is no merit to defendants' contention. There was absolutely no evidence presented concerning the attorney's fees incurred by plaintiffs in *this* proceeding.[1] There was, however, evidence presented regarding considerable emotional distress and humiliation suffered by plaintiffs as a result of their arrest, detention, and prosecution. The jury was specifically instructed that its verdict was to be governed solely by the evidence and the reasonable inferences derived from the evidence. Thus, the Court can only assume that the bulk of the jury's actual damage awards represents compensation for plaintiffs' emotional distress and other intangible injuries. To say that the jury was attempting to give plaintiffs their attorney's fees herein is sheer speculation. The jury's damage awards are by no means excessive. Significantly, defendants have not asked for a new trial on the issue of damages.[2] Under these circumstances, the Court will not deny plaintiffs' motion for fees based on the speculative belief that the jury already has compensated plaintiffs for their fees herein.

2. In order to calculate an appropriate attorney's fee award under § 1988, the Court must engage in a three-step analysis. First, the number of hours spent on unsuccessful claims must be subtracted from the number of compensable hours. *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Second, the Court must determine the base fee by multiplying the reasonable number of compensable hours by a reasonable rate of compensation. *Id.* Third, the Court should consider whether any special circumstances warrant an upward or downward adjustment of the base fee. *See*

---

1. There was evidence concerning plaintiffs' attorney's fees incurred in defending against the loitering charge in municipal court. This evidence was relevant to plaintiffs' damages under their malicious prosecution claims.

2. Indeed, after reflecting on this matter, the Court believes that, if the jury in fact considered matters not in evidence and intended to include plaintiffs' attorney's fees herein in their damage awards, defendants' proper remedy would be a new trial on the issue of damages. The attorney's fees issue would remain for the Court.

*Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Pursuant to the first step of the analysis, the Court has segregated the hours spent on claims and issues unrelated to plaintiffs' false arrest claim against defendants Jacobs and Hardee's. Consequently, the Court has reduced the time statement of plaintiffs' attorney by the hours spent with respect to the malicious prosecution claim,[3] Shawn Tobin's claim, and all claims asserted against the City of Independence. The Court also has subtracted the hours spent by plaintiffs' attorney with respect to the motion to compel for which plaintiff already was awarded sanctions. These calculations leave a total of 115.9 compensable hours. This total includes 84.7 pre-trial hours, 21.0 trial hours, and 10.2 post-trial hours.

Next, the Court must set a reasonable rate of compensation for plaintiffs' attorney. The attorney has asked for $125.00 per hour. The Court believes the requested rate to be excessive. In setting the base hourly rate, the Court must consider the prevailing market rates in the community. *See Blum v. Stenson,* 104 S.Ct. at 1543–47. In addition, the Court must consider a variety of other factors, such as the customary fee charged by the attorney, the contingent nature of the case, and the skill and experience of the attorney. *See Johnson v. Georgia Hwy. Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). Taking these factors into account, the Court finds that $100.00 per hour is a reasonable rate of compensation for this case. Thus, multiplying the number of compensable hours by this hourly rate, the basic attorney's fee award is set at $11,590.00.

Finally, the Court must consider whether any enhancement of this basic fee is warranted by the circumstances of this case. The burden of showing that enhancement is justified is on the fee applicant. To sustain this burden, the fee applicant must show that the results obtained were not merely favorable; they must be "exceptional." *Blum,* 104 S.Ct. at 1550. Here, the high quality of the attorney's work has already been recognized in the hourly rate of compensation awarded herein. *Cf. Blum,* 104 S.Ct. at 1549. Other than that, there was nothing about this case that can be termed "exceptional." Accordingly, the basic attorney's fee will not be enhanced.

3. The last issue before the Court is whether defendant Hardee's should be held liable for the attorney's fees award. At trial, both defendants[4] were jointly represented by the same attorneys. Now, however, defense counsel has raised the argument that only defendant Jacobs should be held liable for any attorney's fees awarded under § 1988. Defendant Hardee's bases this argument on the fact that plaintiffs' § 1983 claim was submitted only with respect to defendant Jacobs.[5] Be that as it may, the Court nevertheless believes that plaintiffs should be considered "prevailing parties" under § 1988 with respect to Hardee's in view of Hardee's liability on plaintiffs' state law false arrest claim. The state law false arrest claim and the § 1983 arrest without probable cause claim are directly analogous.[6] It is well-settled that "when the claim upon which a plaintiff actually prevails is accompanied by a 'substantial,' though undecided (section 1988 listed) claim arising from the

---

3. *See, e.g., Cline v. Brusett,* 661 F.2d 108 (9th Cir.1981) (malicious prosecution claim not cognizable under § 1983).

4. Defendant Jacobs was the Independence police officer who was working part-time as a security guard at the time of plaintiffs' arrest. Defendant Hardee's was Officer Jacobs' part-time employer.

5. Three claims were submitted to the jury: a state law malicious prosecution claim, a state

law false arrest claim, and a § 1983 arrest without probable cause claim. The verdict directors and verdicts on both state law claims named both defendants, while the § 1983 claim was submitted against defendant Jacobs only.

6. The only differences are that, on the § 1983 claim, the plaintiff must establish the "under color of law" element and also bears the burden of persuasion on the probable cause issue.

same nucleus of facts, a fee award is appropriate." *Clients' Council v. Pierce*, 778 F.2d 518, 519 (8th Cir.1985), *quoting Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 3464, 82 L.Ed.2d 746 (1984); *see also Shakopee Mdewakanton Sioux v. City of Prior Lake*, 771 F.2d 1153, 1159 (8th Cir.1985); *Espino v. Besteiro*, 708 F.2d 1002, 1008–09 (5th Cir.1983); *Monahan v. Nebraska*, 687 F.2d 1164, 1172 (8th Cir.1982). Consequently, the verdict against Hardee's on the state law false arrest claim is sufficient to make plaintiffs "prevailing parties" with respect to Hardee's for § 1988 purposes.

■ Defendant Hardee's response to this holding is that they cannot be assessed fees under § 1988 because their liability on the false arrest claim was predicated on *respondeat superior* and *respondeat superior* is not a proper theory of recovery under § 1983. While it is true that defendant Hardee's could not be assessed fees if its underlying liability was predicated solely on *respondeat superior*,[7] the argument of the defendant completely misconceives the nature of its liability. Under the peculiar facts and circumstances of this case, Hardee's is not only indirectly responsible for plaintiffs' injuries as Officer Jacobs' master, it also is *directly responsible* for the violation of plaintiffs' rights because the evidence conclusively established that the conduct of Officer Jacobs was in execution of official Hardee's policy. Two factors support this conclusion. First, defendant Hardee's stipulated not only that Officer Jacobs was acting within the "course and scope of his employment;" Hardee's also conceded that he at all times acted *within the scope of his authority*. This distinction is critical: *respondeat superior* ordinarily is invoked to hold the master responsible for unauthorized acts of the servant so long as those acts fall within the general scope of the servant's employment. *See, e.g., Linam v. Murphy*, 360 Mo. 1140, 232 S.W.2d 937 (1950); *see generally* W. Prosser, *Law of Torts* § 70 (4th ed.

1971) (in order for master to be liable under *respondeat superior*, servant's acts need not fall within his authority). In contrast, when an employee acts within the scope of his authority and carries out the official policy of the employer, the employer may be held *directly* responsible. *See* 3 C.J.S. *Agency* § 423 (1973). This is because a corporation, like a governmental entity, cannot carry out its official decisions except through its agents.

In civil rights cases, the courts have recognized the distinction between unauthorized acts of government agents and conduct which can fairly be characterized as official acts of the governmental entity. *Compare Pembaur v. City of Cincinnati*, —— U.S. ——, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986) (where constitutional violation results from execution of official governmental decision, county may be held liable) *with City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (random, unauthorized conduct of police officer not attributable to city). *See also Hollins v. Powell*, 773 F.2d 191, 195–96 (8th Cir.1985) (city properly held liable where mayor's conduct represented city's official decision); *Williams v. Butler*, 746 F.2d 431, 436–440 (8th Cir. 1984) (where city official is final authority on a matter, his decision is directly attributable to the city). Here, the evidence conclusively showed that Hardee's not only delegated complete authority to Officer Jacobs to control security at the restaurant, it also supported and ratified the specific decision of Officer Jacobs to arrest plaintiffs. Defendant Hardee's indicated throughout the trial, and particularly in closing argument, that it absolutely approved of Officer Jacobs' conduct and that, under the same circumstances, it would arrest plaintiffs again and again. In view of these admissions, the Court does not understand how Hardee's can now seek to disassociate itself from Officer Jacobs' actions as being

---

7. Plaintiffs concede that *respondeat superior* is not a proper theory of recovery under § 1983 and § 1988, even where the master is a private

entity such as Hardee's. *See Powell v. Shopco Laurel Co.*, 678 F.2d 504 (4th Cir.1982).

something other than official acts of the corporation.

Second, the Court also finds it very significant that both Officer Jacobs and Hardee's were represented by the same attorneys throughout this case. Now, for the first time, it appears that defendant Hardee's is attempting to disrupt this harmony by shifting the burden of attorney's fees solely to the shoulders of Officer Jacobs. The Court certainly did not anticipate that Hardee's would employ such a tactic in this case; if such a turn of events had been anticipated, the Court would have inquired before trial as to whether defendant Jacobs had been fully informed of, and consented to, the apparent conflict of interest between him and his co-defendant.

In any event, the Court is satisfied that this apparent conflict of interest is nothing more than that—a substanceless apparition. Throughout the case, the defendants have enjoyed a unity of interest. The evidence conclusively demonstrated that, with respect to security matters at Hardee's, Officer Jacobs was the restaurant's final authority. He was, in effect, Hardee's own Chief of Police. Under the circumstances of this case, then, his conduct is attributable to defendant Hardee's directly and not merely through the legal fiction of *respondeat superior*. Consequently, defendant Hardee's will not be able to escape liability for plaintiffs' attorney's fees herein.

In accordance with the foregoing, it is hereby ORDERED that plaintiffs' motion for attorney's fees under 42 U.S.C. § 1988 is sustained in the amount of $11,590.00. Defendant Hardee's and defendant Jacobs are jointly and severally liable for this attorney's fee award. It is further

ORDERED that plaintiffs' motion for an award of costs is overruled without prejudice. Pursuant to local custom, the Clerk of the Court has the initial responsibility for settling costs. If either party is dissatisfied with the Clerk's settlement of costs, such party may appeal the matter to the Court.