(28 P.3d 1033)

No. 84,963

ROGER NOVAK, REBECCA MASSEY, and CINDY LUSHER, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED, *Appellants*, v. MUTUAL OF OMAHA INSURANCE CO., a Nebraska corporation, MUTUAL OF OMAHA LIFE INSURANCE COMPANY, a Nebraska corporation, and JOHN DOES I-V, *Appellees*.

Opinion filed August 3, 2001.

*Richard D. Greene, Robert W. Coykendall*, and *Joseph W. Kennedy*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, *Glen E. Smith*, of Glen E. Smith & Associates, of Cheyenne, Wyoming, and *John R. Vincent*, of Riverton, Wyoming, for appellants.

*James D. Oliver*, of Foulston & Siefkin L.L.P., of Topeka, *Patrick R. Day*, of Holland & Hart L.L.P., of Cheyenne, Wyoming, and *Debra Egli James*, of Hampton & Royce, L.C., of Salina, for appellees.

Before GREEN, P.J., KNUDSON, J., and PHILIP C. VIEUX, District Judge, assigned.

GREEN, J.: Rebecca Massey and Cindy Lusher appeal from a judgment of the trial court dismissing their action against Mutual of Omaha Insurance Company and Mutual of Omaha Life Insurance Company (Mutual) for lack of personal jurisdiction over Mutual. Both companies were incorporated in Nebraska and have con-

ducted business in Kansas. Mutual has a division office in Wichita, which recruits and supports agents in central Kansas. On appeal, Massey and Lusher, who are nonresidents of Kansas, maintain that the trial court had personal jurisdiction over Mutual because of its presence within Kansas and because it was served with process in Kansas. We agree and reverse and remand.

Roger Novak, who is a resident of Kansas, appeals from the decision of the trial court granting summary judgment in Mutual's favor, finding his action to be time barred. On appeal, Novak contends that his suit should not be time barred because of a clause contained in Mutual's contract. We agree and reverse and remand.

Mutual is a corporation headquartered in Omaha, Nebraska. Mutual offers various insurance products nationwide, including health and disability insurance. Mutual's products are made available by a network of agents employed throughout the United States. The agents are independent contractors and may sell insurance products for other companies. Agents are assigned to local division offices managed by district sales managers and general managers.

New Mutual employees are required to sign the Mutual of Omaha Agent's Contract (MOC). The MOC articulates an agent's basic duties as well as the company's responsibilities and a separate set of "schedules" which describe and control the specific terms of compensation and benefits depending upon the different products and associated contract incentives an agent decides to sell or accept. The sections of the MOC most relevant to this appeal state as follows:

"F. COMPENSATION.

. . . .

3. Agent's Account.

. . . .

(c) The Company shall have the right to withhold payment of any credit balance in the Agent's account for not more than 13 months after termination of this Contract to assure that funds are available to reimburse the Company for any indebtedness. Thereafter, any net credit balance shall become due and payable.

. . . .

"I. MISCELLANEOUS.

. . . .

10. Limitation of Actions. Any claim by the Agent under this Contract must be brought within one (1) year of the occurrence of the claim. Any claim for compensation may only be brought against the corporation which issued the Attachment to which the claim relates.

. . . .

15. Controlling law. This Contract is to be construed in accordance with the laws of the State of Nebraska."

Mutual maintains an account for each agent. The account tracks income, expense items, and compensation payment described as credit and debit transactions. The agent also receives a monthly agent statement detailing the agent's financial activities with Mutual. Agents continue to receive a monthly agent statement for a period after termination of their employment until the account clears.

A large part of an agent's compensation is from commissions received for selling insurance products. "First year" commissions are commissions based upon a percentage of the eligible first-year premium received from the insured in the first policy year. If an agent's employment with Mutual ends before the entire first year of premiums is paid on an issued policy, Mutual stops crediting the agent's account for first-year commissions unless the agent is vested, that is, has been employed by Mutual for 10 consecutive years.

Novak was recruited in Salina, Kansas, to sell Mutual's products in Kansas. Novak began selling Mutual products in early 1992, and his contract was terminated on January 20, 1995, due to lack of production. Upon termination, Novak was furnished with a final agent statement and made no written objection to its contents as required by the contract.

Massey lived and worked in West Palm Beach, Florida. From May 1991 until she left the company in July 1993, Massey sold Mutual products. Lusher began working for Mutual in 1991 and left in 1993. Lusher lived and worked in Wyoming.

On January 20, 1999, Lusher brought an action against Mutual in Saline County, Kansas. Lusher claimed that Mutual breached the MOC by not paying out first-year commissions, regardless of

the length of her employment. Novak and Massey were also plaintiffs in Lusher's action. Mutual moved to dismiss Massey's and Lusher's claims on the ground that they could not obtain jurisdiction over Mutual in Kansas. The trial court agreed and dismissed Massey's and Lusher's claims.

Mutual also moved for summary judgment on Novak's claim, arguing he was barred by the 1-year limitation period under the MOC agreement. On the other hand, Novak argued that the contract should be construed under Nebraska law, and Nebraska law does not allow parties to limit the applicable statute of limitations for a breach of contract claim, which is 5 years. The trial court determined that the contract was a Kansas contract and was to be performed wholly in Kansas. As a result, the trial court applied Kansas law and determined that the 1-year limitation period barred Novak's claim.

Although Massey and Lusher assert several arguments as to why the trial court improperly dismissed their suit, those arguments distilled to their bare essence present the following question: Did the trial court properly dismiss this action for lack of personal jurisdiction over Mutual? Whether jurisdiction exists is a question of law over which an appellate court exercises unlimited review. *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 414, 997 P.2d 681 (2000).

The thrust of Mutual's argument is that Lusher and Massey have no connections to Kansas and their cause of action did not arise in this state. Mutual relies on the Kansas "long arm statute," K.S.A. 60-308, and *Three Ten Enterprises, Inc. v. State Farm Fire & Cas. Co.*, 24 Kan. App. 2d 85, 942 P.2d 62, *rev. denied* 262 Kan. 969 (1997).

*Three Ten* and its predecessor cases adhere to the theory that questions of personal jurisdiction in Kansas require a finding that the case falls within the purview of the Kansas long arm statute. *Three Ten* involved an action by Three Ten Enterprises, Inc., Foam Form (Three Ten), a limited partnership organized under the laws of Kansas and licensed to transact business in Nebraska, against State Farm Fire & Casualty Company (State Farm), a foreign corporation authorized to do business in Kansas. State Farm issued a

policy to Three Ten covering Three Ten's premises in Papillion, Nebraska. Three Ten made a claim with State Farm to recover losses suffered from an employee theft.

Unhappy with the result of the claim, Three Ten sued State Farm in Miami County, Kansas, and argued a theory of recovery under Nebraska law. State Farm moved to dismiss for lack of personal jurisdiction. The trial court denied the motion, holding personal jurisdiction existed under a theory of general jurisdiction.

On appeal, Three Ten argued that the Kansas long arm statute, K.S.A. 60-308(b), is to be liberally construed over nonresident defendants. In addition, Three Ten argued that the doctrine of "general jurisdiction" makes it unnecessary for plaintiffs to show that defendants' conduct falls within the parameters of 60-308(b). 24 Kan. App. 2d at 90. The *Three Ten* court disagreed. Our court determined that general jurisdiction is a due process concept and does not excuse a plaintiff from satisfying the test for long arm jurisdiction under 60-308. As a result, our court reversed the trial court's decision.

Although State Farm in *Three Ten* was apparently served with process under K.S.A. 40-218, which required foreign insurers to consent in advance to jurisdictions in certain situations in return for doing business in this state, Three Ten failed to argue jurisdiction under this statute. Moreover, the *Three Ten* court neglected to address the service under 40-218.

Service in this case was made by serving the Insurance Commissioner under 40-218. After Mutual moved to dismiss for a lack of personal jurisdiction, the plaintiffs re-served Mutual under K.S.A. 60-304(e) and (g). Mutual argues in its brief that K.S.A. 40-218 is not an independent source of statutory authority for gaining jurisdiction over an insurance company by serving it within the state; rather, the statute only "provides the manner in which process must be served on foreign insurers, limiting that to counties in which the plaintiff resides or where the cause of action occurred. Jurisdiction is considered an entirely separate step." According to Mutual, *Three Ten* must be read to require K.S.A. 40-218 to be used in conjunction with K.S.A. 60-308(b) to gain jurisdiction over

a foreign insurer, and K.S.A. 60-308(b) confers statutory authority for the assertion of jurisdiction.

Mutual cites *Deines v. Vermeer Mfg. Co.*, 752 F. Supp. 989 (D. Kan. 1990), as support for the proposition that jurisdiction must be predicated upon K.S.A. 60-308(b), even if service is made under K.S.A. 40-218. In *Deines*, service was made upon the defendant insurance company, Liberty Mutual, apparently under K.S.A. 40-218. Liberty Mutual argued its contacts with Kansas were so minimal that it would be unfair and improper for the court to assert jurisdiction.

The *Deines* court began its analysis of the jurisdiction issue by applying the same two-part test used in *Three Ten*. First, does the defendant's conduct fall within the scope of the long arm statute? Second, does the exercise of personal jurisdiction comply with due process requirements as set out in decisions of the United States Supreme Court? The trial court stated that a plaintiff must satisfy both requirements by a prima facie showing before a court may exercise jurisdiction. 752 F. Supp. at 998. After examining the Kansas long arm statute and the constitutional requirements for the exercise of jurisdiction to comport with due process requirements, the trial court stated:

"In the present case, we are compelled to hold that the court has personal jurisdiction over Liberty Mutual. Liberty Mutual is a foreign insurance corporation authorized to transact business in the State of Kansas. Liberty Mutual, pursuant to K.S.A. 40-218, authorized the Kansas Insurance Commissioner to accept service of process on its behalf. The insurance company also agreed that service of process upon the Commissioner of Insurance would be valid and binding. Thus, personal jurisdiction is proper in this action because this defendant purposefully availed itself of the privilege of transacting business in this state. Moreover, Liberty Mutual had actual knowledge that it could be haled into court in Kansas, and agreed to submit to the jurisdiction of the Kansas courts. Defendant's summary judgment motion as to personal jurisdiction will be denied." 752 F. Supp. at 1000.

Thus, although the *Deines* court stated it was necessary to comply with the Kansas long arm statute, it relied at least partially on Liberty Mutual's actions in consenting to be served through the Kansas Insurance Commissioner to determine it was fair to exercise personal jurisdiction over the company.

K.S.A. 60-308(d) states: "Nothing contained in this section limits or affects the right to serve any process in any other manner provided by law." This subsection recognizes that the long arm statute covers only certain situations. As a result, when the long arm statute does not cover a particular situation, resort must be had to the traditional bases of jurisdiction such as citizenship; domicile and residence; or consent, actual or implied.

For example, Missouri recently rejected an argument that its long arm statute was the exclusive means of obtaining jurisdiction over a foreign corporation and used a traditional method for establishing jurisdiction. In *State Ex Rel. K-Mart Corp. v. Holliger*, 986 S.W.2d 165 (Mo. 1999), a Missouri resident injured in a fall at a K-Mart store in Colorado brought suit against the company in Missouri. K-Mart sought to have the case dismissed for lack of personal jurisdiction, or, in the alternative, on the grounds of forum non conveniens.

As in the present case, K-Mart conceded there were no constitutional impediments under the Due Process Clause to asserting jurisdiction, as the company transacted substantial business in Missouri. The *Holliger* court stated the issue as follows: "K-Mart bases its contention that Missouri courts lack jurisdiction on the remarkable assertion that the only means by which jurisdiction may be obtained over a foreign corporation is through the state's long arm statute, section 506.500." The court continued: "K-Mart's theory turns jurisdictional history on its head. Prior to the enactment of Missouri's long arm statute in 1967, Missouri cases uniformly held that a foreign corporation present and conducting substantial business in Missouri was subject to the jurisdiction of our courts." Further, "[w]here a corporation registered agent is served in Missouri, assertion of jurisdiction was no more than adherence to the traditional understanding that a state may condition a corporation's doing business upon the appointment of an agent in the state for service of process." 986 S.W.2d at 166-67. The court also recognized that historically, jurisdiction was exercised over corporations by service upon an agent in the forum state, and *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945), authorized extraterritorial exercises of jurisdiction where

minimum contacts existed between the defendant and forum state sufficient that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Finally, the *Holliger* court stated:

"K-Mart relies on the long-arm statute for its argument that Missouri does not have personal jurisdiction in this case because the claim did not arise out of one of the activities enumerated in the statute. However, long-arm statutes, as the name implies, are intended to expand the reach of the law of the state to authorize jurisdiction over foreign corporations that are not necessarily authorized to do business in the state but whose activities justify personal jurisdiction. In fact, we can find no Missouri case challenging jurisdiction over a foreign corporation whose registered agent was served in Missouri. The provisions of section 506.150 are incorporated into rule 54.06, which explicitly applies only to 'service outside the state.' In this case, there is no need for a 'long-arm' to reach K-Mart outside of Missouri, because K-Mart has a registered agent in Missouri.

"We reject K-Mart's argument that Missouri's long-arm statute is the exclusive means of obtaining jurisdiction over a foreign corporation. If its argument were to succeed, it would severely limit the reach of Missouri law and the protection that law gives Missouri residents and others authorized to use our state's courts. Under section 351.582(2), issuance of a certificate of authority to a foreign corporation authorizes it to conduct business in Missouri and makes it 'subject to the same duties, restrictions, penalties, and liabilities . . . imposed on, the domestic corporation of like character.' " 986 S.W.2d at 168.

Finding jurisdiction to be proper, the *Holliger* court determined that Missouri's long arm statute was inapplicable. 986 S.W.2d at 169.

Although Mutual urges that the reasoning of *Three Ten*, requiring the two-step analysis incorporating the Kansas long arm statue, is the correct approach, *Three Ten* is distinguishable from the present case. The court and the parties in *Three Ten* did not address K.S.A. 40-218. Here, we determine that Mutual was present within the jurisdiction, that Mutual was served with process while in Kansas, and that Mutual gave its actual consent to jurisdiction under K.S.A. 40-218. As a result, we determine that the trial court had personal jurisdiction over Mutual with respect to the action brought by Massey and Lusher.

Next, Novak maintains that his suit is not barred by the clause in the MOC requiring actions to be commenced against Mutual within 1 year of the time the claim arises. He propounds several

theories under which the limitations clause is either invalid or inapplicable to his suit. The resolution of this issue does not require an analysis of all Novak's theories but rather of the choice of law issues relating to the 1-year limitations clause.

The MOC contains a provision directing that it is to be "construed in accordance with the laws of the State of Nebraska." Novak argues this is a choice of law provision requiring the application of Nebraska law. On the other hand, Mutual claims the language mandates only the application of Nebraska rules of contract construction and not its substantive law. Mutual contends that because the performance of the contract between Novak and Mutual mainly occurred in Kansas, the law of place of performance should govern, which would be Kansas. Because contractual limitations provisions are enforceable in Kansas, Mutual maintains that Novak's suit is barred by the 1-year time period contained in the MOC agreement.

Mutual cites *Aselco Inc. v. Hartford Ins. Group*, 28 Kan. App. 2d 839, 21 P.3d 1011 (2001), in support of its argument that the place of performance rule should be applied. In *Aselco*, the court stated that "[t]he law of the place of performance determines the manner and method as well as the legality of the acts required for performance." 28 Kan. App. 2d 839, Syl. ¶ 7. As a result, the *Aselco* court determined that because an insurer's performance of its duty to defendant would have taken place in Kansas, Kansas law should govern the determination of the existence of the duty.

Kansas follows the Restatement of Conflict of Laws. See *Safeco Ins. Co. of America v. Allen*, 262 Kan. 811, 822, 941 P.2d 1365 (1997). As a result, Kansas applies the *lex loci contractus* doctrine and applies the law of the state where the contract is made. A contract is made where the last act necessary for its formation occurs. *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 210, 4 P.3d 1149 (2000).

Although some Kansas conflicts cases have involved issues of performance, few cases have used the place of performance rule to resolve contract choice of law decisions. See *Hartford Accident & Indem. Co. v. American Red Ball Transit Co.*, 262 Kan. 570, 574-75, 938 P.2d 1281 (1997) (generally Kansas follows the *lex loci*

rule except when public policy requires otherwise); *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 270, 777 P.2d 1259 (1989); *Hefferlin v. Sinsinderfer and others*, 2 Kan. 401, 398-99 (1864); *Gillespie v. Seymour*, 19 Kan. App. 2d 754, 763, 876 P.2d 193, *rev. denied* 255 Kan. 1001 (1994); *American States Ins. Co. v. McCann*, 17 Kan. App. 2d 820, 823-24, 845 P.2d 74, *rev. denied* 252 Kan. 1091 (1993); *State Farm Mut. Auto. Ins. Co. v. Baker*, 14 Kan. App. 2d 641, 644-45, 797 P.2d 168, *rev. denied* 247 Kan. 705 (1990); *Frasher v. Life Investors Ins. Co. of America*, 14 Kan. App. 2d 583, 585, 796 P.2d 1069 (1990); *Simms v. Metropolitan Life Ins. Co.*, 9 Kan. App. 2d 640, 642, 685 P.2d 321 (1984); *Walker v. Imperial Casualty & Indemnity Co.*, 1 Kan. App. 2d 349, 351, 564 P.2d 588, *rev. denied* 223 Kan. 846 (1977). As a result, we decline to apply the place of performance rule.

In the present case, Mutual included language in the contract above the signature line indicating it wished the contract to be made in Nebraska: "The parties hereto have executed this Contract, but the same shall not be binding upon the Company until approved by an Authorized Representative at the Home Office in Omaha, Nebraska." Although Novak was recruited, trained, and signed the contract in Kansas, the explicit language of the contract is that Mutual would not be bound or obligated until it was approved in Nebraska. Therefore, the place of contract formation in this case is Nebraska.

Since the issue is the validity of a provision of limitations, the law of the place where the contract is made will govern the obligations of agents to bring an action against Mutual within 1 year of the time the claim arises. Restatement of Conflict of Laws § 346 (1934). Because that place is Nebraska, Nebraska's substantive law will be applied to determine the validity of the 1-year limitations clause.

Nebraska statutes dictate that an action on a contract or written promise may be brought within 5 years. Neb. Rev. Stat. § 25-205(1) (2000). A contract provision that alters the statutory limit for bringing an action is against public policy in Nebraska and will not be enforced by Nebraska courts. *Dunlop Tire & Rubber Corp. v.*

*Ryan*, 171 Neb. 820, 825-26, 108 N.W.2d 84 (1961). As a result, the 1-year limitations provision in the MOC was void.

Mutual argues that Nebraska's choice of law rules look to the state with the most significant relationship to the case and apply that state's substantive law. According to Mutual, that state would be Kansas in this case and Kansas would enforce the 1-year limitations provision. Mutual cites *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197 (2001), in support of its argument. Nevertheless, *Mertz* is distinguishable from the present case. In *Mertz*, the court specifically noted that "[t]he agreement did not contain a choice of law provision." 261 Neb. at 707. Moreover, the Restatement (Second) of Conflicts of Laws, as quoted in *Mertz* suggests the "contacts" to be considered *"[i]n the absence of an effective choice of law by the parties."* 261 Neb. at 708. (Emphasis added.) Here, the parties *expressly* agreed that their contract should be construed "in accordance with the laws of the State of Nebraska." Moreover, Kansas has expressly followed the *lex loci* rule over the "most significant relationship" test suggested by the Second Restatement. See *Safeco*, 262 Kan. at 822.

Reversed and remanded.